[L. A. No. 954.   Department One. — June 25, 1901.]

In the Matter of the Estate of HENRY K. WINCHESTER,
Deceased.

133   271|
136   603|

WILL — CHARITABLE BEQUEST TO UNINCORPORATED ASSOCIATION — SUB-
SEQUENT INCORPORATION. — An unincorporated association, formed for
a charitable object, composed of certain known members, and gov-
erned by a constitution and by-laws, and having officers chosen to
conduct the business affairs of the society and carry out its objects,
is capable of taking by bequest; and if, intermediate the death of
the testator and the distribution of his estate, the association be-
comes incorporated, with the same members and for the same object,
distribution can be made to the incorporation.

APPEAL from a decree of the Superior Court of Santa
Barbara County distributing the estate of a deceased person.
W. S. Day, Judge.

The facts are stated in the opinion.

Richards & Carrier, for Appellants.

An unincorporated society cannot take by will. (*Rhodes* v.
*Rhodes*, 88 Tenn. 637; *Jones* v. *Green*, 36 S. W. Rep. 729; *Greene*
v. *Dennis*, 6 Conn. 301;[1] *McCord* v. *Ochiltree*, 8 Blackf. 15;
*Grimes* v. *Harmon*, 35 Ind. 198; *Succession of Franklin*, 7 La.
Ann. 415; *Succession of Hardesty*, 22 La. Ann. 333; *State* v.
*Warren*, 28 Md. 352; *Church Extension etc.* v. *Smith*, 56 Md. 393;
*Owens* v. *Missionary Society*, 14 N. Y. 380;[2] *White* v. *Howard*,

---

[1] 16 Am. Dec. 58.                    [2] 67 Am. Dec. 160.

46 N. Y. 144; *Marx* v. *McGlynn*, 88 N. Y. 357; *Holland* v. *Peck*, 2 Ired. Eq. 255; *Trustees etc.* v. *Adams*, 4 Or. 83; *Stonestreet* v. *Doyle*, 75 Va. 366;[1] *Heiss* v. *Murphy*, 40 Wis. 276.)

William G. Griffith, for Respondent.

The bequest to the Santa Barbara Natural History Society is a charitable bequest, and should be so considered in determining the question of its validity. (*Jackson* v. *Phillips*, 14 Allen, 539; *Russell* v. *Allen*, 107 U. S. 163; 5 Am. & Eng. Ency. of Law, 2d ed., p. 929; *American Tract Society* v. *Atwater*, 30 Ohio St. 77.[2]) A bequest to an unincorporated society for charitable uses is good and enforceable, unless rendered invalid by local laws. (*Burbank* v. *Whitney*, 24 Pick. 146;[3] *Washburn* v. *Sewall*, 9 Met. 280; *Bartlett* v. *Nye*, 4 Met. 378; *Dexter* v. *Gardner*, 7 Allen, 243; *Burr* v. *Smith*, 7 Vt. 241;[4] *Preachers' Aid Society* v. *Rich*, 45 Me. 552; *Jackson* v. *Phillips*, 14 Allen, 539; *Potter* v. *Chapin*, 6 Paige, 639; *Chambers* v. *Higgins*, 49 S. W. Rep. 436; *American Tract Society* v. *Atwater*, 30 Ohio St. 77;[2] 2 Kent's Com. 288, note A; 5 Am. & Eng. Ency. of Law, 2d ed., p. 918; Beach on Wills, Pony Series, sec. 128; Boone on Corporations, Pony Series, sec. 52.)

CHIPMAN, C.—Henry K. Winchester died testate, February 21, 1895. In his will he provided as follows: "I give to the Santa Barbara Natural History Society, of Santa Barbara, California, the sum of two thousand dollars." At the time of his death, and until June 28, 1898, this society was an unincorporated organization, on which latter date the members of the society duly incorporated under the laws of this state. The incorporated society petitioned the court for a decree of partial distribution, which was granted by the court, and from this decree the executors appeal, on the judgment roll alone. The court found the following facts: That the petitioner "was organized as a society in the year 1876, and ever since continued to be, up to the time of its incorporation as hereinafter mentioned, a regularly organized unincorporated society, governed by a constitution and by-laws adopted by the members thereof, having regularly elected officers, and holding regular meetings, and having for its object to advance the study and promote knowledge of the various branches of natural history,

---

[1] 40 Am. Rep. 731.                [3] 35 Am. Dec. 312.
[2] 27 Am. Rep. 422.                [4] 29 Am. Dec. 154.

by holding meetings, providing for lectures, and establishing a museum of natural history specimens, and was known as and called 'The Santa Barbara Natural History Society'"; that "on June 28, 1898, the members of said society formed a corporation under the laws of this state, the petitioner herein, and said society has ever since continued to be, and now is, a duly organized corporation, known as and called the Santa Barbara Society of Natural History"; the purposes were declared to be similar to those for which the original society was formed, although stated in different terms, and, among other things, it was provided that the society "shall hold in possession real estate, and funds contributed as annual dues and by voluntary subscriptions."

It was also found that all of the devises and bequests to charitable or benevolent societies, taken collectively, do not exceed one third of the estate; that distribution to various legatees have heretofore been made, amounting in all to 89.38 per cent of the amount to which said legatees were entitled, but no part of said legacy of $2,000 has been paid; that petitioner rented a building from the executors, at the monthly rental of $12.50, no part of which has been paid; that said legacy is subject to an inheritance tax. As conclusions of law the court found, that the bequest is a valid bequest to charitable uses, binding upon the estate of deceased; that petitioner was, as it existed at the time said will was executed, and at the date of the decease of the testator, and has ever since continued to be, and now is, capable of taking said legacy, and it was decreed that the executors pay to petitioner 89.38 per cent of said legacy of $2,000 after deducting $325, the amount due as inheritance tax, and interest. The rental due from petitioner to said executors was decreed to be $325.

Appellants present two questions: 1. Can an unincorporated society (other than a mutual benefit association) take a bequest by will in this state; 2. If it cannot, can it, upon incorporating subsequently to the death of the testator, claim the legacy which while unincorporated it could not take?

Appellants concede that the promotion of the knowledge of natural history is a charitable object, and it is also conceded that in the courts of last resort in several states, bequests directly to unincorporated societies having charitable objects in view are upheld, but it is contended that the better reason is

with the decisions in those states denying the power of such societies to take charitable bequests. Appellants say: "We do not claim that unincorporated societies are incapable of taking because of the indefiniteness of the beneficiaries." "This," as respondent says, "is an essential element of a charity. The public at large was to have been benefited by the promotion of the knowledge of natural history. But the trustee must be such that he can be held accountable." It is also conceded that where no trustee is named, the court may appoint one. "But in this case," it is claimed, "the testator has designated a trustee. And this trustee, being an unincorporated society, cannot be held to a performance of the trust. And yet, to take the bequest from the trustee named, and to give the fund to others, would be to exercise that prerogative power under the rule of *cy pres,* . . . which is denied to our courts." (Citing *Estate of Hinckley,* 58 Cal. 497.) I have given the position of appellants thus fully, as it narrows the inquiry very much. Appellants err in assuming that the unincorporated society, being named as the grantee, thus becoming in a certain sense the trustee, cannot be held to a performance of the trust. Mr. Perry says: "These bodies, or quasi-corporations [referring to churches, societies, conferences, yearly meetings of Friends and families of Shakers and other organizations], have been considered so far under the control of a court of equity that they would be compelled to execute the duties of the trust imposed upon them, and could be dealt with for a breach." (2 Perry on Trusts, sec. 730.)

Appellants also err in assuming that the case involves the necessity of invoking the rule of *cy pres* to the full extent, as applied in England, in order to uphold the bequest. The legatee, at the testator's death, and long prior thereto, was an existing organization, composed of certain known members, governed by a constitution and by-laws, and having officers chosen to conduct the business affairs of the society and to carry out its objects. The society had a name, by which it was known, and under which its purposes were effectuated, and the bequest was made to the society by this name. Of the intention of the testator there can be no question. He intended to aid the study of natural history, through this particular society, by giving to it the amount of money named in his will. The use being charitable, the purpose and the donee certain and definite, equity will not allow the trust to fail for want of a trustee to

enforce it, should such interposition of the court become necessary.

In *Estate of Upham*, 127 Cal. 90, the testator bequeathed the residue of his estate "to the legally qualified and constituted trustees or managers of the Good Templars Orphans' Home of Vallejo, . . . in trust, for the use and benefit of the orphan children of said institution." It was contended that because the home was unincorporated there were no trustees named capable of taking. The court said: "These trustees seem to be appropriate persons to take charge of this charitable fund, and manage it for the purposes of the trust; but even if it should be held that in a strict legal sense they are not capable of taking, yet the charity would not fail for that reason. A court will not allow a charitable trust to fail for want of a legal trustee." (*Russell* v. *Allen*, 107 U. S. 163, and *Schmidt* v. *Hess*, 60 Mo. 591, are cited approvingly.)

In *Russell* v. *Allen*, 107 U. S. 163, it was said: "If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees, under the superintendence of a court of chancery; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead."

In *Schmidt* v. *Hess*, 60 Mo. 591, the grantor deeded certain land to the "Lutheran Church," for purposes of a burial-ground, and delivered the deed to his son-in-law. The trustees of the Evangelical Lutheran Trinity Church brought the action to have vested in themselves, as such trustees, the title to the property. Evidence was admitted to identify the claimants with the church to which the grantor was attached and which it was his intention to aid. It was said in the opinion: "Although, in consequence of the non-incorporation of the church for whose benefit the grant was made, there was no one *in esse*, at the time of making the donation, capable of being the recipient of the trust, yet, the use being a charitable one, a court of equity, having ascertained the intent of the grantor, will not allow the grant on that account to fail, but will see to its effectuation."

*American Tract Society* v. *Atwater*, 30 Ohio St. 77,[1] is an instructive case. A bequest in trust, for the benefit of the

[1] 27 Am. Rep. 422.

parents of the testator, was created. He directed that upon the death of his parents the trust should cease, and that his trustee should distribute certain remaining funds as follows: "To apply the same so that it may be used for the interests of religion, and for the advancement of the kingdom of Christ in the world, as follows, to wit: He shall pay to the treasurer of the American Tract Society the sum of one thousand dollars." Similar directions were made as to three other societies. The court points out that the testator conceived a scheme for advancing Christ's kingdom in the world, and carried it out by directing the money to be paid to the various societies, and that as soon as the money arrived at their treasuries, the scheme was accomplished and the will fulfilled. The court said: "It is not as though he bequeathed to a trustee for the purpose of advancing the kingdom of Christ. He bequeaths to these societies because they are advancing the kingdom, which is the precise object he wants to accomplish. He first states the object he wishes to effect, and then states how he proposes to effect it. He is willing to pay the money direct to them. To them he trusts that they will forward his cherished idea. As said, the societies themselves are the direct beneficiaries of the trust, although, if they should attempt to use their money for purposes foreign to those for which they exist, doubtless they might be restrained to those purposes; not by reason of anything in the will, but because they should be restrained to the purposes for which they were created." Again, it was said: "The testator has created these societies an agency to carry out his scheme; he has given them power over the application of his bounty, and the exercise of that power relieves the bequest of all objections made on account of vagueness or uncertainty." Again, "Although the testator uses the names of the treasurers, this is only his mode of designating the societies to which he desires his money to go."

In *Carter* v. *Balfour*, 19 Ala. 814, the will read: "I give one thousand dollars, to be paid at my wife's death, and to be divided in equal proportions betwixt the following benevolent societies, viz.: the Baptist Societies for Foreign Missions, and the American and Foreign Bible Societies; and at my sister's death, if the boy Mike, given to her during her lifetime, be alive, he shall be sold to the best advantage, and the proceeds of the sale equally divided between the societies above named." It was insisted that these bequests must fail because the

societies were merely voluntary associations, unincorporated, and incapable by law of taking bequests, and that there is no trustee to take for them; and further, that the object was too vague. The opinion proceeds: "I think these descriptions sufficiently specific, and if societies can be found which were organized and known by those named at the time of the testator's death, they should be considered the societies referred to by the will, and capable of taking the bequests, whether incorporated or not. In making the gifts to the societies by their names, I think it clearly and necessarily inferable that the gifts were intended to be made to them in their aggregate capacity, and for the purposes for which they were organized, and that the testator could not have intended the gifts for the individual members of the societies, or he would have made the bequest to them in their individual names, in the ordinary way. It must be presumed that the testator knew for what object the societies were formed, and that he intended to have the funds applied to that object." The opinion then shows that these bequests would be sustained, independently of the statute of Elizabeth, and after an examination of the authorities, concludes: "But I think the weight of American authority is decidedly in favor of such bequests." The learned justice who wrote the opinion reviews the cases *pro* and *con*, and devotes especial attention to the leading case holding adversely, namely, *Baptist Association* v. *Hart*, 4 Wheat. 1, and his conclusion was that the same court has partially, if not altogether, overruled the Baptist Association case.

It was expressly held in *Carter* v. *Balfour*, 19 Ala. 814, that there was no occasion for invoking the doctrine of *cy pres*, and it was said: "The bequests should be paid only to the societies specified in the will, or their authorized agents. If the societies, or either of them, did not exist at the time of the testator's death, or cannot now be found, organized and known as above stated, then the bequest to such society or societies should be considered and disposed of as lapsed legacies."

We do not deem it necessary to refer further to the cases, of which there are many, holding similar views. (See 5 Am. & Eng. Ency. of Law, 2d ed., p. 918.) We are satisfied with the reasoning that has led to the upholding of bequests such as the one before us. Indeed, we think the decision may rest alone on the conclusion reached in *Estate of Upham*, 127 Cal. 90. The fact that in that case the bequest was to the trustees

of the Orphans' Home, and not directly to the Orphans' Home, makes no difference. In either case the intention would be the same, and the capacity to take would be the same.

We do not decide, nor is it necessary to so hold, that the subsequent incorporation of the society would add anything to its capacity to take at the death of the testator. The bequest would have been binding on the estate, had there been no incorporation. But as the society now has a corporate existence, and the present members are the same as the members of the unincorporated society, and the objects are the same, there can be no objection to its receiving the gift. (*Preachers' Aid Society* v. *Rich*, 45 Me. 552.)

We discover nothing in *Grand Grove etc.* v. *Garibaldi Grove etc.*, 130 Cal. 116,[1] necessarily in conflict with the views herein expressed.

We advise that the judgment be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.          Van Dyke, J., Garoutte, J., McFarland, J.