(51 Misc. Rep. 523.)

## MORGAN v. DURAND et al.

(Supreme Court, Equity Term, Monroe County. October, 1906.)

**1. WILLS—CONSTRUCTION—NATURE OF ESTATE—TRUSTS.**

Testator directed his executors, on the happening of certain events, to pay over his estate to the trustees of the University of Rochester, to be used for female education of high grade in the city of Rochester, under the management of such trustees, the institution to be made a part of said university or to be kept independent, as the trustees might determine. It is also provided that the estate should be held as a perpetual fund and the income thereof to be devoted to the objects named. *Held,* that the gift was to the trustees in their corporate capacity, or to the University of Rochester absolutely, female education of a high grade being within the powers of the corporation, and that no trust was thereby created.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1575–1581.]

**2. CONSTITUTIONAL LAW—VESTED RIGHTS—RULES OF DESCENT.**

Where, in an action to construe a will conveying certain property to the trustees of a university, plaintiff, under the will, took no estate, but based his claim under the statute of distribution as a collateral heir, and, in case of the invalidity of the gift to the university, the estate would have vested immediately in the son and widow of the testator, plaintiff had no vested interests which would prevent the application of the statute of 1893 (Laws 1893, p. 1748, c. 701), under which the will would be valid, though executed prior to the passage of such act, even if it created a trust in the trustees of the university as individuals.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 181–189.]

**3. PERPETUITIES—ACCUMULATIONS.**

Where a testator in a will by which he devised certain moneys to a university under a clause "since 1873, before which this plan was formed, my estate has shrunk, and it will be necessary to accumulate it," etc., such clause contains testator's suggestion as to the management of the fund, and is not a provision for the accumulation of the income of personal property in violation of Personal Property Law, Laws 1897, p. 508, c. 417, § 4.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 67, 68.]

Action to construe the will of Lewis H. Morgan, deceased, and to recover the residuary estate to the University of Rochester. Complaint dismissed.

The testator, Lewis H. Morgan, was a resident of the city of Rochester and died at said city in December, 1881, leaving an estate consisting of personal property of the value of about $92,000, and leaving a widow and one child, a son, his only heir at law. He left the will in question, which was executed on the 23d day of May, 1878, and a codicil made on the 18th day of April, 1881, by which, after giving certain legacies, he gave the use and income of all his remaining estate to his wife and son and to the survivor of them during their natural life, and upon the termination of such life estates he gave the principal to the child or children of his son, if any there were. In case the son left no child or children, the residuary estate was then disposed of by the following clauses of the will, which are the clauses alleged by the plaintiff to be invalid:

"Third. In case of the death of my said son without child or children, or lawful descendants, I direct my said executors, after the death of my said wife, to convert the whole of my estate into money, in time and manner at their discretion, except my family tomb at Mount Hope Cemetery, my library and cases, and my collections, and to pay over the same to the trustees of the University of Rochester for the purposes hereinafter named.

"Fourth. Upon the occurrence of the events before named, the death of my son without children, I desire to use my said estate for the purposes of female education of high grade in the city of Rochester, and under the management of the trustees of said university; the said institution to be made a part of said university, if the trustees choose to make it such, or to be kept independent and subject to their management and control. When said trustees shall have signified their acceptance of such devise and bequest, I direct my said executors to pay over the said proceeds of my estate into the hands of the said trustees of the University of Rochester, to be held by them as a perpetual fund, and the income thereof to be devoted to the objects named.

"Fifth. Since 1873, before which this plan was formed, my estate has shrunk, and it will be necessary to accumulate it, or it may be that parties will co-operate in the work of founding a female college in Rochester. I would much prefer that the fund herein provided be used in connection with other funds contributed for the same object, that an institution might be created commensurate with the position and wants of Rochester.

"Sixth. I give to my son the use of my library, collections, and cases, for and during his natural life, and after his decease, I give the same to the institution named herein, should the trustees of the university accept the trust hereby created."

The residuary estate proved to amount to something more than $75,000 of personal property, including the library and cases valued at about $6,000: there being no real estate except an undivided interest in a small tract of land in northern Michigan, of little value. The testator's widow died in 1883, and his son died July 22, 1905, intestate, leaving no wife or descendant. The income of the residuary estate was paid to the widow and son during their lives by the executors, who still have the custody of the principal and who have never accounted or had a judicial settlement of their accounts or proceedings. Plaintiff is one of the nephews of the testator, and he brings this action against the executors and the trustees of the University of Rochester, individually, and as such trustees. Harriet Steele Porter, a sister of the testator, was, on her application, allowed to intervene as a defendant, and by her answer she seeks the same relief demanded in the complaint.

Edgerton R. Williams, Jr., for plaintiff.

J. Ewing Durand, in pro per.

Charles M. Williams (Walter S. Hubbell, of counsel), for defendants trustees of the University of Rochester.

Asher P. Whipple, for defendant Charles R. Morgan, as executor.

Wherry & Morgan, for defendant Harriet S. Porter intervening.

FOOTE, J. The provisions of the will disposing of the residuary estate to the trustees of the University of Rochester, after the termination of the life estate to the widow and son, are attacked upon three principal grounds: First, as suspending the absolute ownership beyond two lives in being contrary to the statute; second, as creating a trust the objects of which are indefinite; and, third, the beneficiaries are indefinite. It is also contended that the provisions in controversy are conditioned upon an accumulation prohibited by law; and, if the gift is not intended as a trust in the trustees of the university as individuals, but a gift to them in their corporate capacity, that the university is incompetent to take, because it already holds personal property to the limit permitted by statute.

The plaintiff construes the will as giving the residue, not to the University of Rochester or its trustees in their corporate capacity, but to the trustees as individuals, in trust, to found, if they so elect, a female college in Rochester, entirely separate from and independent of the present university, and as a distinct corporation. This construction would make the intent of the will to suspend the absolute ownership of the fund in perpetuity, to be held by the trustees, and the income only applied for the benefit of the female college, or if, on the incorporation of the female college, the trustees have power to turn the principal over to such corporation, still there is or may be a suspension of the absolute ownership beyond two lives in being, as there is no period limited by lives within which trustees are to incorporate the college and turn over the fund. If this is the true construction of the will, and if its validity is to be tested by the law in force at the time of the death of the testator, as plaintiff contends, then no doubt the scheme of the will for the benefit of female education of high grade in the city of Rochester would fail. The absolute ownership of the fund would be suspended beyond two lives in being at the death of the testator, in violation of the statute, and the beneficiaries of the trust are not indicated with sufficient certainty to enable the courts to enforce performance by the trustees, which was necessary in charitable as well as other testamentary trusts, prior to 1893.

The trustees of the university contend that the intent of the testator was to give the fund absolutely to the University of Rochester, or, which is the same thing, to its trustees in their corporate capacity, to be used for higher education of females, and that the several methods indicated for the use of the fund are mere suggestions of the testator, not intended to limit or qualify the absolute title of the university. If such an intent is found from the terms of the will taken together, then no statute of the state has been violated and no established rule of law as to testamentary dispositions of property, infringed.

What, then, was the intent of the testator as to the provisions in question as shown by what he himself put in his will to indicate it? While testator was educated as a lawyer and practiced as such during the earlier part of his life, and while he was an author of distinction upon ethnologic subjects, requiring accuracy and precision in statement, still these circumstances cannot be used to affect the meaning of the words he employed so long as they are words in common use and not

ambiguous. But the courts have formulated certain rules for the construction of wills, in the light of which the provisions in question here must be examined. Among these rules is one stated in this language by Judge Redfield in his work on Wills (volume 2, p. 442) :

"The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator, for the fact of making a will raises a very strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of the will."

See, also, Schult v. Moll, 132 N. Y. 122, 30 N. E. 377, and cases there cited; Meeks v. Meeks, 161 N. Y. 71, 55 N. E. 278.

Again, courts are bound to presume that a testator intended to make a legal disposition of his estate, rather than a void or an illegal one. In Butler v. Butler, 3 Barb. Ch. 310, Chancellor Walworth declares this rule to be that:

"In the construction of wills, if the language of the testator is such that it may be construed in two different senses, one of which would render the disposition made of his property illegal and void, and the other would render it valid, the court should give that construction to his language which would make the disposition of his property effectual."

See, also, Du Bois v. Ray, 35 N. Y. 162, where Chief Justice Davies reviews the earlier English and American cases which support this rule. Also Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933; Hopkins v. Kent, 145 N. Y. 363, 40 N. E. 4.

This rule is also applied in the case of Greene v. Greene, 125 N. Y. 506, 26 N. E. 739, 21 Am. St. Rep. 743, where this language is used in the opinion of the court by Judge Gray:

"The doctrine established by the cases is that a trust estate will never be implied where it would render a will illegal and void. If we were to hold this devise to be an express trust, we should be doing a work which would result in overthrowing the whole testamentary scheme, for the accomplishment of no useful purpose and not demanded by any legal principle."

Another rule of very ancient origin requires a liberal construction of testamentary provisions in favor of charities, which will be referred to in another connection.

Looking at the provisions of this will in question here in the light of these rules, we find the leading purpose of the testator to be to devote the principal of his estate, after his wife and son had enjoyed the income during their lives, and in case the son left no descendants, to promote female education of high grade in the city of Rochester under the management of the trustees of the University of Rochester. To accomplish that object, he directs his executors, on the death of his son without issue, to convert the whole estate, except his library, etc., into money, and to pay the same over to the trustees of the university. The University of Rochester is a corporation, under a charter issued many years before this will was made, which provides that its trustees shall be a body corporate; and it is settled by authority that a gift or grant to the trustees of a corporation for a corporate purpose is a gift or grant to the corporation. N. Y. Institute, etc., v. How's Ex'rs, 10 N.

Y. 84. We may presume that all this was known to the testator. The principal purpose of the incorporation of the university, as expressed in its charter, is "the education of youth"; no distinction between the sexes being expressed. "Female education of high grade" is therefore within the corporate powers of the university. Indeed, the university was already engaged in that work before the death of testator's son, having five years before admitted females to all its courses on the same conditions as men and conferred the same degrees upon graduation. There is nothing to prevent the gift to the trustees of the university in their corporate capacity from taking effect as an absolute gift, if such was the intention of the testator as shown by the will as a whole. To manifest such an intent it is not necessary that the word "give" or "bequeath" should be used. A direction to pay or deliver is sufficient and has the same meaning.

I come now to consider the language of the will to see how far it supports the claim of the learned counsel for the collateral relatives that it discloses an intent that there should be no gift to the university, but to its trustees as individuals, in trust to found and incorporate a female college in Rochester. The third clause directs the executors, upon the termination of the two life estates and the death of the son without issue, to convert the estate into money (except the cemetery lot, library, etc.), and to pay over the same to the trustees of the "University of Rochester for the purposes hereinafter named." By the fourth clause he proceeds to state the purposes, and says:

"I desire to use my said estate for the purpose of female education of high grade in the city of Rochester, and under the management of the trustees of said university, the said institution to be made a part of said university, if the trustees choose to make it such, or to be kept independent and subject to their management and control. When said trustees shall have signified their acceptance of said devise and bequest, I direct my said executors to pay the said proceeds of my estate into the hands of the said trustees of the University of Rochester, to be held by them as a perpetual fund, and the income thereof to be devoted to the objects named."

In this clause it is said testator discloses an intent to create a trust and to vest in individuals title to this large fund in perpetuity. While such a construction attributes to the testator the grossest ignorance as to the statutory law of the state, which had long prohibited such trust to extend beyond two lives in being, still we must take the clause as we find it and give it the meaning its language naturally imports. It will be observed that testator does not say in words that he gives the fund "in trust," which we should expect, if he so intended. If he intended to create a trust, he left it to inference. Nevertheless, this circumstance is not controlling, as a trust may be created without any set form of words, if the intent appears. But, if a trust was intended and the trustees of the university in office at the death of the son were to be its trustees, then those individuals would continue trustees of the fund, though they might cease to be trustees of the university; and in time, as changes occurred, a majority of the trustees of the university would have no voice in the management of the fund, for no provision is made for making the subsequently appointed trustees of the university also trustees of the fund. Thus, in time, the management of the fund would

become distinct from that of the university, and testator's plain intent, in that respect, thwarted. If a trust was created, then the fund was intended to remain in the hands of the trustees and the income only used for female education, whether the trustees elected to make the institution a part of the university or kept it independent. To construe the fourth clause as creating a trust requires the further construction that the individuals who happened to be trustees of the university at the death of testator's son became the permanent trustees of the fund, with no provision for filling vacancies in their number, and no requirment that subsequently elected trustees of the university should become trustees of the fund. The election to make the institution a part of the university would not relieve the individual trustees of the management and control of the trust fund, and so in time the management of the university and of the fund would, or might, become separated and perhaps not in harmony. Such an intention is not disclosed in the will, and should not be imputed to the testator unless plainly required.

The use of the word "institution" in this clause is not, in my opinion, inconsistent with an intent on the part of testator to give the fund absolutely to the University of Rochester. The context shows clearly that the creation of a separate corporation was not contemplated, for the "institution" was to be made a part of the University of Rochester, if the trustees chose to make it such, or to be kept independent. In either case it was to be the same "institution." If made a separate corporation, it could not, of course, be made a part of another corporation, the University of Rochester. I think the word "institution" in this connection was intended to refer to the place or building where the female students were to receive their instruction, or should have their collegiate residence. Thus the trustees of the university would be at liberty to erect dormitories on the university campus for the female students and have them attend with the male students in the chapel and classroom. The institution would then be a part of the university. Or, if this plan was not found advisable, then the sexes could be kept separate and the buildings and recitation rooms for the female students located elsewhere in the city of Rochester and be independent of the male department, but still under the control and management of the trustees of the university. I think it cannot be said from this clause, or from the will as a whole, that testator contemplated any greater separation or independence of the two institutions than this. The charter of the university was broad enough to enable it to give higher female education. Why should testator desire or intend another corporation to be formed for that purpose to be managed by the same men? No sufficient reason has been suggested, and the language of the will does not, I think, have that meaning or require that interpretation. In the fifth clause testator says:

"Since 1873, before which this plan was formed, my estate has shrunk and it will be necessary to accumulate it, or it may be that parties will co-operate in the work of founding a female college in Rochester. I would much prefer that the fund herein provided be used in connection with other funds contributed for the same object, that an institution might be created commensurate with the position and wants of Rochester."

Here, again, we are asked to attribute ignorance to testator of stat-
ute law absolutely prohibiting a testamentary provision for the accumu-
lation of the income of personal property, except for the benefit of
infants during their minority (Pers. Prop. Law, Laws 1897, p. 508,
c. 417, § 4), or a deliberate intent to make a will in violation of the
statute, and so void. I find rather, in this clause, confirmation of tes-
tator's intent to give the fund he wished to devote to female education
absolutely to the University of Rochester. If such was his intent, then
he violated no law in requesting or suggesting that the income of the
fund be accumulated, for, if the university owned the fund, it would
have that right. I regard this clause of the will as containing testa-
tor's advice or suggestions to the trustees of the university as to the
management of the fund, and not as intended to limit or qualify the
title of the university to the fund or to create a trust in respect to its
management. Nor do I find in the expression, "or it may be that par-
ties will co-operate in the work of founding a female college in Roches-
ter," anything necessarily inconsistent with an intention to vest title
to this fund in the university. If it were clear from the whole will
that testator intended to provide for the foundation and incorporation
of a female college, the contention that a trust was intended to be vested
in the trustees as individuals would be quite strongly supported, for
the business of incorporating colleges is not within the chartered pow-
ers or purposes of the University of Rochester, and a gift to its trustees
for such a purpose would not be treated as a gift to the corporation.
But, as we have already seen, testator directed that the institution for
female education his bounty was to found, or assist in founding, should
become a part of the University of Rochester, if the trustees so de-
termined. He did not intend that any college or institution should be
created except such as could be made a part of the university, and so
I think the expression "founding a female college" does not require or
imply the creation of a separate corporation. To establish a depart-
ment for female education in the university would answer every re-
quirement of the will taken as a whole. This discussion is pertinent
only to the question as to whether testator intended to create a trust
to be administered by the trustees of the university as individuals, or
an absolute gift to them in their corporate capacity. If a gift absolute
was intended, as seems the most reasonable interpretation, then the title
of the university cannot be defeated by suggestions or even directions
in the will to incorporate a college or to make any other use of the
money not authorized by the charter of the university. Such directions
would be incapable of enforcement.

There is nothing in the sixth clause of the will requiring a different
interpretation of it as a whole than has already been given to it in con-
struing the previous clauses. In that clause he gives to his son the use
of his library, collections, and cases for life, and then provides, as fol-
lows:

"And after his decease, I give the same to the institution named herein,
should the trustees of the university accept the trust hereby created."

Technically, the only "institution" which the testator has previously
named is the University of Rochester, and it being our duty to sustain

this will, if we may do so without doing violence to the language employed by the testator or to a manifest intent appearing from the whole will, it is quite permissible to construe this as a direct gift to the university as the only institution previously named in the will. But the word "institution" was used by the testator in the fourth and fifth clauses of the will, referring particularly to one which should do the work of female education of high grade which he wished to promote. We have already seen, however, that such institution was not intended by him to be an incorporated institution, separate and distinct from the University of Rochester, because, under some circumstances at least, it was to become a part of the university, so, if the use of the word "institution" in the sixth clause was not intended to designate the University of Rochester, it must be held to refer to that separate branch or department which the trustees of the university were authorized to found and support with the aid of the testator's bounty for female education.

I am also of opinion that the word "trust," used in the expression "should the trustees of the University accept the trust hereby created," does not signify a technical legal trust, but refers to the confidence implied by the testator in vesting his property which he intended to devote to a great public work in the university corporation to be managed by its trustees.

Thus far I have considered this will as if its construction and legal effect were controlled by the law as understood and interpreted by the courts at the death of the testator in 1881; and while I concede that a different construction can be made of the language employed by the testator, whereby an intent can be spelled out to create a trust in the trustees of the university considered as individuals, which would suspend the absolute ownership of the fund beyond the prohibited period and require an illegal accumulation of income, and which would also be void because the testator failed to designate the beneficiaries of the trust with sufficient definiteness to permit of its enforcement, still I think such a construction is not required by anything contained in the will itself, and that, as between the two constructions, assuming that the reasons in support of each are equally weighty, that one should be adopted which will render the will valid, rather than void, and result in the testator's property being used for the purpose which he intended.

It is contended, however, by the learned counsel for the university that this will may be sustained and pronounced valid, even if construed to create a trust in the trustees of the university as individuals; and this contention is based upon the effect of chapter 701 of the Laws of 1893. Section 1 of that act (Laws 1893, p. 1748) is as follows:

"No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same if in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same. The legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee, then the title to such land or property shall vest in the Supreme Court."

101 N.Y.S.—64

It is settled that the intent and purpose of this act was to restore to the courts the power formerly exercised through the Court of Chancery to sustain and enforce trusts for charitable uses; and as construed by the Court of Appeals in Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, and subsequent cases, the courts are now authorized and required to sustain gifts and bequests for charitable purposes, notwithstanding indefiniteness as to the beneficiaries or the suspension of the power of alienation not measured by lives. That statute affords a complete answer to the allegations made here against the validity of the provisions of this will, if construed to create a trust in individuals for the benefit of female education in the city of Rochester, provided it applies to this will. The statute is general in terms, and not limited to wills made or probated since its enactment. But the Constitution protects all vested property rights against invasion or impairment by the Legislature. People v. Powers, 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502; Murray v. Miller, 178 N. Y. 316, 70 N. E. 870. Whether this statute can be availed of to sustain this will depends on whether plaintiff and the other collateral relatives had acquired any vested property rights in this fund prior to its enactment. Counsel for the collateral relatives contend that they had; and, if I correctly apprehend their position, it is this: That at the death of the testator the gift or grant contained in the will to the trustees of the university was void as the law then stood, not because of the incapacity of the trustees to take, but because of the invalidity of the grant. Thereupon the argument is: Testator's sister and his nephews and nieces, or such of them as should survive testator's son, became entitled to a future contingent interest or estate in the residuary estate, which became a vested estate on the death of the son without issue, and that the Constitution protects future contingent estates as well as vested. This position would clearly be sound if the future contingent estate had been given to the collateral relatives by the will itself, but I do not think it can be supported on principle where the estate or interest claimed arises only from the statutes of distribution of intestate estates. On the death of testator, if the provisions of his will in question were invalid, then all that part of his estate not effectually disposed of by his will vested immediately in his widow and son under the statutes. If he had left no will, they would have taken absolutely his whole estate, and the collaterals nothing. The fact that the widow and son were given by the will a life estate only did not prevent vesting in them all the remainder of the estate not effectually disposed of by the will. They would get it by virtue of the statute of distribution, not by virtue of the will, and they would get it just the same if testator had said in his will that they should not have it, but had failed to give it effectively to some one else. Gallagher v. Crooks, 132 N. Y. 338, 30 N. E. 746; Herzog v. Title, Guaranty & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146; Pomroy v. Hincks, 180 N. Y. 75, 72 N. E. 628; Henriques v. Yale University, 28 App. Div. 361, 51 N. Y. Supp. 284; Henriques v. Sterling, 26 App. Div. 30, 49 N. Y. Supp. 1071; Wood v. Hubbard, 29 App. Div. 168, 51 N. Y. Supp. 526.

It follows that if the gift to the trustees of the university was in-

valid, the property so given vested immediately on the death of the testator in the son and widow, to be divested only by the son having descendants to take the title under the will. It was then entirely competent for the widow and son, or the son alone, after the widow's death, to have disposed of this residuary estate by will or grant, and, had he or they done so, nothing would have remained for the collaterals to take. Likewise, it was competent for the Legislature, at any time before the son's death, to have changed or repealed the statutes of distribution so as to cut off completely the rights now being asserted by the collaterals. In this view of the case, the collateral relatives had no interest, vested or contingent, in the estate of Lewis H. Morgan at the time of the enactment of the statute of 1893. It would seem, therefore, that the court should be governed by the public policy made known through the act of 1893 in the construction of this will, and that no party to this action has any constitutional property rights to prevent giving that statute full effect upon this will. It is not necessary now to consider whether any personal representatives of the estate of Lemuel S. Morgan, the son, would be in a position to invoke the protection of the Constitution to prevent the application of this statute to this will. Neither plaintiff nor the defendant Mrs. Porter are entitled to represent in this action the estate or property owned by Lemuel S. Morgan at the time of his decease.

If I am correct in holding that the sister and nephews and nieces acquired no interest, vested or contingent, in the personal property of Lewis H. Morgan not effectually disposed of by his will, then the complaint in this action must be dismissed, even if I am wrong in the construction which I have given to this will, and without reference to the other questions which have been so ably presented by counsel. For that reason I shall not undertake to discuss or express any opinion upon these other questions. It is sufficient to say that the administrator of the estate of Lemuel S. Morgan, he having died intestate, is alone entitled to administer his estate and to recover such interest, if any, as he became entitled to in the funds involved in this action not effectually disposed of by the will of his father.

The plaintiff's complaint must, therefore, be dismissed, with costs against plaintiff and against the defendant Mrs. Porter, and in favor of the defendants the trustees of the University of Rochester.

Findings may be prepared accordingly and will be settled upon two days' notice.

Ordered accordingly.