testatrix, when the will took effect. See Matter of Zimmerman, 22 Misc. Rep. 411, 50 N. Y. Supp. 395.

[2] The tenth clause of the will reads as follows:

"I give and bequeath to my granddaughters, the children of my daughter Julia Owsion, the amounts set opposite their names, with interest at four per cent. (4%) from the time of my death to the time they are paid, to be paid to each on their becoming twenty-one (21) years of age, and if any one does not reach said age, then that one's share shall revert to the residuary estate: (a) To Agnes Owsion, the sum of $200; (b) to Sophia Owsion, the sum of $200; (c) to Victoria Owsion, now Mrs. Oboroska, the sum of $200."

The said Victoria Owsion (Mrs. Oboroska) died before the testatrix, leaving a daughter, Cecilia Oboroska, and a husband Marian Oboroska. The daughter, Cecilia, also predeceased the testatrix, and the executor asks for instructions as to whom to pay this legacy of $200 bequeathed to Victoria Owsion.

It is well settled that at common law a legacy does not vest in the legatee until the death of the testator, and should the legatee predecease said testator the legacy lapses and either sinks into the residue or is distributed according to the rule of the statute of distributions. Savage v. Burnham, 17 N. Y. 561; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Matter of Wells, 113 N. Y. 396, 21 N. E. 137, 10 Am. St. Rep. 457; Moffett v. Elmendorf, 152 N. Y. 475, 46 N. E. 845, 57 Am. St. Rep. 529. An exception is created by statute (Decedent Estate Law [Consol. Laws 1909, c. 13] § 29, as amended by chapter 384 of the Laws of 1912) saving from extinguishment a legacy bequeathed to a child or other descendant of a testator or to a brother or sister of a testator who shall die during the lifetime of the testator leaving a child or other descendant who shall *survive* such testator, but this section is inapplicable to the matter now before me for the reason that the child of the legatee also predeceased the testatrix without leaving issue. The legatee, Victoria Owsion (Victoria Oboroska), and her daughter, Cecilia Oboroska, both having predeceased the testatrix, never became entitled to the legacy of $200, and the same must be distributed under the residuary clause contained in the will. Costs taxed. Insert amounts in decree and present the same for signature.

Decreed accordingly.

---

(81 Misc. Rep. 79.)

### In re GRAY'S ESTATE.

(Surrogate's Court, Rensselaer County. May, 1913.)

1. CHARITIES (§ 20*)—BEQUESTS TO UNINCORPORATED ASSOCIATIONS—VALIDITY.

Bequests to unincorporated branches of incorporated associations engaged in foreign missionary work are invalid; an unincorporated society being incapable of taking a bequest.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 18–33; Dec. Dig. § 20.*]

2. CHARITIES (§ 20*)—CONSTRUCTION—BEQUESTS TO UNINCORPORATED ASSOCIATIONS.

Bequests to unincorporated branches of an incorporated society engaged in foreign missionary work could not be taken by the incorporated societies, where the branch organizations were not engaged in the same

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

work as the main organization, and they had their own organization, resources, and expenses.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 18–33; Dec. Dig. § 20.*]

3. CHARITIES (§ 20*)—CONSTRUCTION OF WILL—TRUSTS.

In a will bequeathing a certain legacy "to the treasurer for the time being" of the Women's Presbyterian Synodical Board "in aid of Foreign Missions," the quoted words did not constitute a gift to the treasurer individually, nor make him a trustee, especially where it appeared that the latter phrase was commonly used in many of the names of the societies of the Presbyterian Church.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 18–33; Dec. Dig. § 20.*]

Judicial settlement of the account of the administrators of the estate of Sarah M. Gray, deceased. Decreed according to opinion.

Scott & Tiffany, of Hoosick Falls, for administrators with the will annexed.

Frederick W. Cameron, of Albany, for Women's Board of Foreign Missions of the Presbyterian Church, the Women's Board of Home Missions of the Presbyterian Church of the United States, and others.

William J. Roche, of Troy, for next of kin.

HEATON, S. [1, 2] Upon this judicial settlement it becomes necessary to determine whether two legacies, each being of one-third of the residuary estate, are valid. The will was made in 1886, and the testatrix died in 1908. One legacy is given to the "Treasurer for the time being of the Women's Presbyterian Synodical Board in Aid of Foreign Missions of the Synod of Albany" and is claimed by the Women's Board of Foreign Missions of the Presbyterian Church in the United States of America. The names of the legatee and of the claimant are so dissimilar that it cannot be claimed that the testatrix had the claimant in mind and intended to name it as the legatee when she drew her will. The conclusion that she did not refer to the claimant by that name is strengthened by the proof that some years prior to the making of the will, which was in 1886, there existed in Albany, a city adjoining the county in which testatrix lived, an unincorporated society known as the "Women's Presbyterian Board of Foreign Missions of the Synod of Albany." This name is so similar to the one used in the will that perhaps it might be declared to be the legatee, if it were not for the fact that it never was incorporated and went out of existence shortly before the will was made. About that time, in 1884, the Synod of New York was incorporated, and the Albany Synod became a Presbytery affiliated with the New York Synod. The Synodical Society then became a Presbyterial Society, under the name of the Women's Foreign Missionary Society of the Presbytery of Albany, which is also an unincorporated society, and therefore not capable of taking a bequest. Mount v. Tuttle, 183 N. Y. 358, 76 N. E. 873, 2 L. R. A. (N. S.) 428.

The claimant urges that, as these unincorporated societies have been shown to be branches and auxiliaries of the Women's Board of For-

eign Missions of the Presbyterian Church of the United States of America (incorporated), that society can be awarded the legacy. This can hardly be so in view of the lack of proof, either in the will or outside of it, that the testatrix intended her gifts to go to that society, and because the evidence is that these unincorporated societies were not engaged in the work, or any part of the work, of conducting and carrying on foreign missions as such; but their objects were to create and stimulate interest in foreign missions and to collect such money as they could in the interest of the cause. They had their own organization, their own resources, and their own expenses.

Suppose, for the purpose of a clearer understanding of the situation, that there was now and at the time the will was made a local unincorporated society of the exact name used in the will, and that society appeared as a claimant of the legacy. The law of this state would prohibit this court from decreeing payment to such voluntary unincorporated society. If, then, the national society, the claimant, stepped in and demanded payment to it, because the local society was, as between themselves, a branch or auxiliary of it as to that particular part of its work of interesting the congregations of the various churches in missionary work and obtaining systematic contributions to the cause, it would be clear that the national society would have no claim to the fund. The condition which actually exists is no more favorable to the claimant than the supposed condition would be. It is apparent, therefore, that the gift to the local branch, which is incompetent to take, cannot be construed to be to another and different society having other functions and conducting in general a different work.

[3] The expression used, namely, "to the treasurer for the time being" does not constitute a gift to such treasurer individually, nor make him a trustee. The treasurer does not claim the legacy, and it nowhere appears that it was the intention of the testatrix to make the legacy personal to the treasurer. Neither was a trust in the treasurer intended, and none could lawfully be created for the benefit of an unincorporated society. The words "in aid of foreign missions" do not imply a trust, since it has been shown that they are or were used in many of the names of the societies of the Presbyterian Church. There was, therefore, no personal bequest, or the creation of a trust, and, there being no trust created, the legacy is not saved by chapter 701, Laws of 1893, and amendments. Murray v. Miller, 178 N. Y. 316, 70 N. E. 870; Matter of Durand, 194 N. Y. 477, 87 N. E. 677.

The other legacy in question was given to the treasurer for the time being of the "Women's Presbyterian Synodical Board in Aid of Home Missions of the Synod of Albany," and is claimed by the Women's Board of Home Missions of the Presbyterian Church of the United States of America. What has been said regarding the legacy to the Foreign Missionary Society applies to this legacy to the Home Missionary Society. In addition, the fact that the claimant is not incorporated would seem, of itself, to prevent this court from directing payment to it.

Attention has been called to the act of 1884, chapter 340, incorporating the Synod of New York, which combined or merged the Synod of Albany and other small synods into a larger synod. This act pro-

vided that the property of the several synods and presbyteries which were continued or merged in the Synod of New York should vest in the New York Synod. While this act might affect the transfer of property already in possession of the several synods and presbyteries thus united in the larger synod, it could not affect these legacies given, not to the synod or presbytery, but to voluntary societies existing within their territory.

While this court will always endeavor to carry out the wishes of a testator, yet there may be cases where the means to be employed are not recognized by the law of the state as being good public policy, and thus the good of all must be considered as being of more importance to the community than the carrying out of a particular intention. The law considers it bad public policy that testators should be allowed to make bequests to an association of individuals having no legal or continuous existence, which might be dissolved or abandoned at any time, thus leaving the property so accumulated to be appropriated or misappropriated at the will of those having it in possession.

It will be decreed that two-thirds of the residuary estate is undisposed of, and goes by the intestate law to the next of kin of the testatrix.

Decreed accordingly.