[Civ. No. 15395. Second Dist., Div. Two. July 19, 1946.]

Estate of NELLIE H. B. CLIPPINGER, Deceased. CLARA L. BETHEL, Appellant, v. JOHN L. BREARTON et al., Respondents.

Frank E. Gray for Appellant.

Michael F. Shannon and Thomas A. Wood for Respondents.

WILSON, J.—Decedent died December 13, 1943, at the age of 76 years. She left a holographic will dated June 25, 1943, in which after giving directions concerning her funeral and burial and making some small personal bequests, she directed as follows: "Seventh: I give any balance there may be to the trustees of the Order of the Eastern Star Home at Rockford Illinois, in the names of Miss Elza Barker (deceased) who was an early member of Eastern Star Chapter #53, of Rockford, Illinois, and Mrs. Nellie Barker Clippinger a member of Acacia Chapter #21 of Los Angeles, California."

Since the will was executed less than six months prior to decedent's death, appellant, who is her half sister and her only surviving heir at law within the classification of section 41 of the Probate Code, on the assumption that said bequest was for a charitable use (Prob. Code, §§ 41, 42, 43), filed a petition to determine heirship.

The nine directors of the Eastern Star Home of Rockford, Illinois, in their own behalf individually and personally and not in their capacity as directors and not in behalf of the home, filed objections to the petition asserting that by the terms of said provision in the will the testator bequeathed the residue of her estate to them "to have and to hold as tenants in common and not otherwise." The "Grand Chapter, Order of the Eastern Star of the State of Illinois, for the use and benefit of the Eastern Star Home at Rockford, Illinois," through the same counsel who appeared for said directors individually, also filed objections to said petition and prayed that the residue of the estate be distributed to said Grand Chapter. No mention is made of the Grand Chapter in the findings or in the decree and presumably its petition was abandoned.

The court made findings of fact and entered a decree reciting that appellant is a half sister and heir at law of decedent and a legatee under the terms of said will; that she was not entitled to the distribution of any portion of the estate except the sum of $25, which was bequeathed to her by the will; that by the residuary clause above quoted the true designation of the parties referred to therein is not "the trustees" but is "the directors of the Eastern Star Home of Rockford,

Illinois''; that nine individuals named in the findings and in the decree (respondents) were, at the time of decedent's death, the directors of said home, and that they took as the residuary beneficiaries under said clause of the will ''as individuals, as tenants in common.'' From said decree appellant has appealed.

1. *Did the testator intend her estate to go to the institution or to the directors personally?* The declarations in the findings and in the decree (1) that by the term ''trustees'' the testator meant the directors of the home and (2) that the nine persons who were directors at the time of her death were the residuary beneficiaries as individuals, with no requirement that the funds should be used for the benefit of the home, are inconsistent. If decedent intended that the estate should go to the home she did not intend it to pass to any person or persons without conditions for its use.

A will is to be construed according to the intention of the testator. (Prob. Code, § 101.) The primary purpose of the interpretation of a will is to ascertain the testator's intent as disclosed by the language he has used (*Estate of Henderson,* 161 Cal. 353, 357 [119 P. 496] ; *Estate of McCray,* 204 Cal. 399, 402 [268 P. 647]), and his intention must be sought for and carried out. (*Estate of Dwyer,* 159 Cal. 664, 669 [115 P. 235].) ''. . . when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, . . .'' (Prob. Code, § 105; *Estate of Marti,* 132 Cal. 666, 668 [61 P. 964, 64 P. 1071] ; *Kauffman* v. *Gries,* 141 Cal. 295, 299 [74 P. 846] ; *Estate of Farelly,* 214 Cal. 199, 203 [4 P.2d 948].)

When we here consider the words or the circumstances separately, or the two conjointly, we find no difficulty in construing the will. The words evidence that the testator's object was to provide a fund for the use of the home and not to make a personal bequest.

Among the circumstances under which the will was made and which must be considered in aid of its construction are these: The testator was apparently alone in the world; she made no mention of her husband and it will be assumed that she was a widow; the only relatives mentioned are her half sister (appellant) and her half brother, to whom she bequeathed $25 each and whom she described as ''practically

strangers to me," and a sister who died in 1929; the bequest now in question was made to the trustees of the home in Rockford, and it was made "in the names of Miss Elza Barker (deceased) who was an early member of Eastern Star Chapter #53, of Rockford, Illinois, and Mrs. Nellie Barker Clippinger," the testator; she directed that her body be buried in Rockford, and that the grave marker be purchased there; a bequest was made to the trustees of the cemetery for the upkeep of her grave. All these matters show clearly that her mind was centered in Rockford, and that she intended that her entire estate, except for minor personal bequests totaling $200 in cash in addition to her trunk and personal effects, should pass to the Eastern Star Home maintained there. The employment of the words "in the names of" demonstrate that the bequest was to be a memorial to Miss Barker and herself.

Since decedent bequeathed only $25 each to her half brother and half sister because they were "*practically* strangers" to her, it would stretch credulity to the breaking point to conclude that she intended that the remainder of her estate, which is stated to be about $17,500, should go to nine persons "as individuals, as tenants in common" who, as far as the record discloses, were *complete* strangers to her. She no doubt was unaware of the fact that the persons in charge of the home were designated as directors and not as trustees, but the intent and not the terminology will prevail in the construction of the will. The fact that she referred to them as trustees of the home is the clearest indication that she intended the home and not the individuals to succeed to her property.

No indication appears in the will, nor can any inference be drawn from the language used by the testator, that decedent intended her estate to go to respondents individually without constraint upon the manner in which the proceeds should be used. The construction placed on the will by the trial court would defeat her manifest purpose that the memory of Miss Barker and herself should be perpetuated among the inmates of the home who were intended to be the recipients of her bounty. She obviously had in mind a benefit to the home and the amelioration of the condition of those who were cared for therein.

While a construction of a will preventing an intestacy is to be favored over one which results in an intestacy (Prob. Code, § 102; *Estate of Mallon,* 34 Cal.App.2d 147, 153 [93 P.2d 245]), nevertheless the court, in pursuing its duty to

ascertain a testator's intention, is without power to insert into the will by way of construction "some undeclared purpose which may be imagined to have been in . . . mind" (*Estate of Spreckels,* 162 Cal. 559, 567 [123 P. 371]), and if the legal effect of the expressed intent is intestacy it will be presumed that the testator designed that result. It is elementary that in the interpretation of wills the language used must be liberally construed with a view to carrying into effect what the will as a whole shows to have been the real intent of the testator. (*Estate of Hoytema,* 180 Cal. 430, 432 [181 P. 645].)

To read into a will under which the estate is bequeathed to the trustees of a charitable institution an intent that it should go to unnamed, unknown and unthought of individuals, without restriction upon the use of the funds, would render the rules of construction of wills as uncertain as the answer obtained by a maiden as she plucks petals from a daisy, murmuring meanwhile, "He loves me, he loves me not."

The cases cited by respondents do not sustain their personal claim to a distribution of the estate. In *O'Donnell* v. *Murphy,* 17 Cal.App. 625 [120 P. 1076], the decedent stated in her will that it was her desire to erect a suitable memorial to her husband in Golden Gate Park but that there was some doubt as to whether a donation for that purpose would or would not be considered a charity or an unlawful trust and would be set aside; for that reason she had abandoned the idea. She bequeathed to Adolph B. Spreckels and R. H. Lloyd, two of the Park Commissioners of the City and County of San Francisco, the sum of $200,000. The language of the will was unambiguous and expressly stated that she did not intend to create a trust. The designation of the devisees as park commissioners was merely an identification of the individuals and did not indicate any intent on the testatrix's part that they should take the money as trustees. She no doubt had confidence in the men and was satisfied that they would not appropriate the money to their own use but would, of their own accord, erect the desired memorial, but there are no words tending in the slightest to create a trust or to direct the purpose for which the money should be expended. In *Estate of Ward,* 125 Cal.App. 717 [14 P.2d 91], the testator bequeathed a sum of money "to the person who at my death shall be the pastor in charge of St. Patrick's Roman Catholic Church . . . to be used by such person to procure masses to be said for the repose of my soul." This was held to be a

personal bequest to the pastor without direction as to the places in which or the persons by whom the Masses should be said, and that the testator did not intend to impose any obligation on the pastor other than to see that the Masses were said. He was not required to go beyond his own efforts to fulfill the obligation—there was no trust by reason of the fact that the obligation imposed upon the pastor did not go to the use and disposition of the money. In *Flood* v. *Ryan,* 220 Pa. St. 450 [69 A. 908, 13 Ann.Cas. 1189, 22 L.R.A.N.S. 1262], the testator gave his estate to a church and a charitable institution and provided that if he died within 30 days after the execution of the will he bequeathed his residuary estate to the Most Rev. P. J. Ryan, Archbishop of Pennsylvania, absolutely. This was held to be a personal bequest to the archbishop, and not a trust, and that he took the estate as an individual. In testifying in court he stated that he was morally bound to use the money as the testator had intended it to be used if he had survived more than 30 days after the execution of the will, but the court held that the commendable mental attitude of the archbishop did not create a trust. In *Estate of Robinson,* 63 Cal. 620, a sum of money was left "to the mayor, common council and commonalty of the city of San Francisco" in trust to be invested and the interest thereon paid out to the destitute women and children of the city in such manner as the mayor and common council might deem proper and beneficial. This was held to be a valid bequest for charitable purposes. These cases show that when a testator intends to create a trust the courts so hold and when a personal bequest is made a trust is not imposed—the testator's intent is found and made effective.

The vice of respondents' position, as well as of the decree, is disclosed by the unusually frank statement in their brief that they "are not, under the terms of the will here involved, called upon to use the gift for a charitable purpose. It is an outright gift to the trustees without restriction and without limitation. The trustees may dispose of the property in any manner that they see fit." Such is the result, as we have already pointed out, that would follow the affirmance of the decree.

The construction placed on the will by the trial court is totally at variance with the benevolent intention of decedent. The decree that the estate, contrary to her wishes, should go to individuals without any direction or safeguard as to the purpose for which the property is to be used cannot be sustained.

2. *The bequest to the trustees of the home was for the use and benefit of its inmates.* ▮ The fact that the will does not provide that the estate shall go to the institution "for corporate purposes" does not, as argued by respondents, militate against the validity of the trust. By reason of the finding that respondents as individuals were entitled to the estate it was unnecessary for the court to find and it did not find whether the Eastern Star Home is or is not a charitable organization. However, it is referred to and treated throughout the briefs as an unincorporated charitable association. As such it is entitled to take under the will. (Prob. Code, § 27; *Estate of Winchester*, 133 Cal. 271, 274 [65 P. 475, 54 L.R.A. 281].)

▮ But the bequest to it is subject to the inhibitions of sections 41, 42 and 43 of said code. The death of the testator having occurred within six months after the execution of the will, the home is entitled to only one third of the residue of the estate, and the testator died intestate as to the remaining two thirds.

▮ A gift to a charitable institution is for the benefit of its inmates (*Estate of McDole*, 215 Cal. 328, 332 [10 P.2d 75]; *Estate of DeMars*, 20 Cal.App.2d 514, 516 [67 P.2d 374]), and a devise to a society organized for a charitable purpose without a declaration of the use to which the gift is to be put is given in trust to carry out the objects for which the organization was created. (*Estate of McDole, supra,* p. 334, and cases cited; *Estate of Henderson*, 17 Cal.2d 853, 855, 857 [112 P.2d 605].) If the founder of a charitable trust describes its general nature he may leave the details of the administration to be settled by trustees. (*Russell* v. *Allen*, 107 U.S. 163, 167 [2 S.Ct. 327, 27 L.Ed. 397, 399].) In the case last cited the institution for which the trust was created was neither organized nor incorporated during the lifetime of the donor.

A bequest to the trustees or to the treasurer of a university or of an institution is not a gift to them as individuals but the bequest goes to the university or the institution itself. (*New York Institution for the Blind* v. *How's Exrs.*, 10 N.Y. 84, 91; *Trustees of University of Georgia* v. *Denmark*, 141 Ga. 390 [81 S.E. 238, 241]; *Morgan* v. *Durand*, 51 Misc. 523 [101 N.Y.S. 1002, 1008]; *In re Durand*, 56 Misc. 235 [107 N.Y.S. 393, 398]; *Manice* v. *Manice*, 43 N.Y. 303, 387; *Currin* v. *Fanning*, 13 Hun. (20 Sup.Ct. N.Y.) 458, 461; *In re Gray's Es-*

*tate,* 81 Misc. 79 [142 N.Y.S. 1067, 1069] ; *Hornbeck's Executor* v. *American Bible Society,* 2 Sandf. Ch. (N.Y.) 133, 135, 137.) A devise "for the building of a new church house" is a gift to the church (*Kelley* v. *Welborn,* 110 Ga. 540 [35 S.E. 636, 637]) and a bequest to the consistory of a church is to the church. (*Consistory etc.* v. *Brandow,* 52 Barb. (N.Y.) 228, 233.) A bond or a promissory note in favor of "the standing committee" of a society or in favor of the directors of a company is in legal effect made to the society or the company. (*New York African Society* v. *Varick,* 13 Johns. (N.Y.) 38; *Bayley* v. *Onondaga etc. Co.,* 6 Hill (N.Y.) 476, 477 [41 Am.Dec. 759] ; *Newport Mechanics Manf. Co.*̇ v. *Starbird,* 10 N.H. 123, 125 [34 Am.Dec. 145].)

■ 3. *The trust will not fail by reason of (a) the absence of technical words creating the trust, or (b) the failure of the testator to name a trustee.* The failure of decedent to name a trustee or to express clearly her intention to create a trust does not destroy the effect of her intent so to do. It is the duty of the court to ascertain the intention of the testator, and in performing that duty it should disregard the fact that the will does not name a trustee or use the words "upon trust." (*Estate of McCray,* 204 Cal. 399, 402 [268 P. 647] ; *Taber* v. *Bailey,* 22 Cal.App. 617, 620; *Morgan* v. *Durand,* 51 Misc. 523 [101 N.Y.S. 1002, 1006].)

Technical language is not necessary to the creation of a trust, and if it appears from the whole instrument that the property bequeathed is to be dealt with for the benefit of others, the court will affix to it the character of a trust and will impose fiduciary duties upon the party receiving the property. (*Colton* v. *Colton,* 127 U.S. 300, 310 [8 S.Ct. 1164, 32 L.Ed. 138, 142] ; *Estate of Shaw,* 198 Cal. 352, 361 [246 P. 48] ; *Estate of McDole,* 215 Cal. 328, 332 [10 P.2d 75].)

■ A charitable trust will not be permitted to fail for want of a legal trustee (*Estate of Upham,* 127 Cal. 90, 94 [59 P. 315] ; *Estate of DeMars,* 20 Cal.App.2d 514, 516 [67 P.2d 374] ; *Estate of McDole, supra; Estate of Winchester,* 133 Cal. 271, 274 [65 P. 475, 54 L.R.A. 281]) ; nor is it impaired by the failure of the donor to give directions for the expenditure of the income. (*Estate of Budd,* 166 Cal. 286, 289 [135 P. 1131] ; *Estate of DeMars, supra;* 2 Rest., Trusts, § 397, p. 1190, and comments *f* and *g* under said section, p. 1194.)

When appointing a trustee to administer a trust where none has been designated by the testator or the donor, the court

must determine, among other things, the qualifications and capabilities of the appointee, whether he is legally required to be a resident of the state in which the appointment is made or whether the court may designate a resident of another state, and the amount and character of the security that will be required of him for the faithful performance of his fiduciary duties in carrying out the purposes of the trust.

4. *The effect of the previous order instructing and directing the executor.* ▮▮▮▮ Several months prior to the filing of appellant's petition the executor of the estate filed a petition for instructions reciting that it had been ascertained that there was no official body of said home known as trustees; that the Grand Chapter, Order of Eastern Star of the State of Illinois, was incorporated as a nonprofit, eleemosynary corporation or lodge, and that the Eastern Star Home at Rockford was one of the charitable institutions operated and maintained by it for the benefit of elderly or dependent members of the order; that the executor believed that decedent intended by said bequest to give the residue of her estate to said Grand Chapter. After a hearing the court made an order dated and filed September 5, 1944, finding and instructing the executor that such was decedent's intent and directing that upon distribution of the estate the residue should be distributed to said Grand Chapter for the use and benefit of said home.

Respondents' contention that said order is void and of no effect must be sustained. The court is without power to make an order determining who may take under a will except upon a petition for partial or final distribution or to determine heirship. The petition of the executor was not for any of such purposes and the order made thereon purporting to direct the manner in which the estate should be distributed is void. (*Estate of Thramm,* 67 Cal.App.2d 657, 659 [155 P.2d 119].)

Since the same counsel appeared in the instant proceeding for both the directors of the home and the Grand Chapter and filed separate objections for each in opposition to appellant's petition which is now under consideration, and since the Grand Chapter is not referred to in the findings or in the decree appealed from and the objections of the directors as individuals were sustained and the residue of the estate was awarded to the latter, the Grand Chapter will be deemed to have concurred in respondents' objections to the validity of the order of September 5, 1944, and to have abandoned and

relinquished its claim, if any it had, to any portion of the estate.

The decree appealed from is reversed with directions to the trial court (1) to make and file findings of fact as follows: That decedent intended that the residue of her estate should go to the Eastern Star Home of Rockford, Illinois; that said home is a charitable institution and that by reason thereof the bequest fails as to two thirds of said residue and decedent died intestate as to said interest; that said home shall receive one third of said residue and appellant Clara Louise Bethel shall receive the remaining two thirds; (2) to make and file conclusions of law in accord with said findings; (3) to enter a decree and to distribute the estate in accord with said findings and with this opinion; (4) to strike from the findings of fact and conclusions of law now on file in the superior court all matter in conflict with the findings herein directed to be made or in conflict with this opinion; (5) to appoint a legally qualified trustee or trustees to whom, upon the furnishing of appropriate security, shall be distributed the one-third share of the residue of the estate to which said home is lawfully entitled.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied August 5, 1946, and respondents' petition for a hearing by the Supreme Court was denied September 16, 1946. Carter, J., and Schauer, J., voted for a hearing.