JOHN C. JORDAN, *et al., v.* CARY D. LANDIS, as Attorney General, on behalf of the State of Florida, and on relation of Elizabeth Hungerford Goodwin, a widow, *et al.*

175 So. 241.
Opinion Filed June 4, 1937.
Rehearing Denied July 1, 1937.

*Tilden & Hays* and *W. H. Poe,* for Appellants;
*George P. Garrett* and *H. N. Roth,* for Appellees.

DAVIS, J.—This was a suit in equity brought by Cary D. Landis, as Attorney General of the State of Florida, for and on behalf of the State, and on relation of Elizabeth Hungerford Goodwin, a widow, and the Reverend Richard Wright, against the Robert Hungerford Industrial School, a non-profit Florida corporation, and John C. Jordan and Eula B. Jordan, his wife, seeking to quiet title to certain

606

lands in Orange County by cancelling of record a certain deed purporting to have been executed by Warren Logan and S. E. Ives, as surviving trustees of the Robert Hungerford Industrial School, unincorporated, to the Robert Hungerford Industrial School, a non-profit corporation, conveying the lands in. controversy; also by cancelling a certain mortgage covering the same lands and other properties, given by Robert Hungerford Industrial School to John C. Jordan, Eula B. Jordan and G. O. Kummer. The bill, as amended, also sought to re-establish a public charitable trust described in the bill with reference to the Robert Hungerford Industrial School and prayed such accounting and discovery as might be found necessary to re-establish and carry out the terms of the trust.

The controversy involved was decided upon the pleadings by the Court below. Upon the facts set up in the bill as amended, an answer and counterclaim, and exhibits, the Chancellor entered his final decree on the merits, cancelling the deed of record from Logan and Ives, as trustees, to the Robert Hungerford Industrial School, incorporated; cancelling the mortgage from Robert Hungerford Industrial School to the defendants, Jordan and Kummer; quieted permanently the title to the land involved, insofar as the instruments cancelled of record were concerned; permanently enjoined the defendants from further prosecuting a pending foreclosure suit in the Circuit Court of Orange County and retained jurisdiction of the cause to enable those supporting the Robert Hungerford Industrial School project as a charitable trust with their time, finances, or interest, to re-organize its affairs in a manner satisfactory to the Court, in order that the Court could, in this same proceeding, subsequently appoint a permanent trustee or trustees to operate and manage the affairs of said public charitable trust.

Appeal was taken from the final decree and certain interlocutory orders that had been entered during the progress of the cause. That appeal is now before this Court for its consideration.

The facts of this controversy may be summarized as follows:

In order to create a public charitable trust, Edward C. Hungerford, on the 20th day of April, 1899, executed a trust deed in favor of eight individual trustees, conveying to the said trustees by said deed for the purpose of the said trust, the fee simple title to a tract of land. The purpose of the said instrument was the creation of a public charitable trust consisting of a co-educational normal school for negroes. The eight original trustees accepted the trust and entered upon the execution thereof. Pursuant to the creation of the said trust, schools were built on the property in question, and a co-educational school for negroes, in accordance with the purpose of the original trust, was conducted thereon. Buildings were built and the school conducted on the basis of contributions made and endowments furnished by various persons, including donor, for the advancement of the trust.

In 1911, certain persons, constituting a part of the trustees and a certain other person, incorporated a non-profit corporation. In 1924 two of the original eight trustees, describing themselves as the surviving trustees, undertook to convey the legal title to the trust property to a third party, namely, the non-profit corporate entity created in 1911. Thereafter, the said non-profit corporation proceeded to subject itself to an indebtedness far in excess of the legal limit of indebtedness fixed by its charter.

In 1931 the said non-profit corporation proceeded to amend its charter to authorize it to subject itself to a limit of indebtedness in excess of the amount to which it had

already subjected itself, and, thereupon, executed a mortgage to three of its creditors, mortgaging the entire trust property involved in this controversy to secure said indebtedness.

The mortgage just mentioned was allowed to fall into default and the three creditors instituted mortgage foreclosure proceedings. Thereupon, the Attorney General of the State of Florida, on behalf of the State of Florida, and, on relation of two of the heirs or devisees, or representatives thereof, of the original trust donor, brought this present suit to cancel the purported deed by the surviving trustees and to enjoin the further prosecution of the said mortgage foreclosure action and to cancel the said mortgage. It is admitted in this case that neither the original trustees nor the donor had any part in incurring, or in approving, the debt evidenced by the mortgage made by the said non-profit corporation. It is also admitted that neither the Attorney General nor the individual relators are estopped or barred by reason of laches, or acquiescence or knowledge with regard to the purported deed by the surviving trustees or the subsequent misconduct of the trust by the non-profit corporation.

The complainant below, Elizabeth Hungerford Goodwin and the Reverend Richard Wright, are the successors of the original donor in trust, the former claiming an interest in the property in her own right as the daughter of Edward C. Hungerford while the latter claims an interest in the property as grantee of the reversionary interest of the donor, Edward C. Hungerford, insofar as that reversionary interest became vested in certain grandchildren of Edward C. Hungerford.

The forty-acre tract of land in controversy comprises the heart of the industrial school and the trust in favor of said industrial school created by Edward C. Hungerford. Lo-

cated thereon are all of the buildings of any particular value belonging to or pertaining to the school. Said property has, since the creation of the trust, always been publicly and notoriously used and actually occupied and well known as a negro industrial school and exists for no other purpose.

So it is that the said negro school is, and always has been, considered and dealt with as a public trust and charity and not an enterprise for profit. .This is so, because it has never been self-sustaining, but has been supported by gifts, donations, beneficiaries and endowments made by charitable people interested in negro vocational education in Florida. And during the many years that have passed since the trust was created, the school has become possessed of considerable endowment funds and its assumption of a recognized and important place in the function of educating negroes has gained for it a valuable measure of good will, entitling it to be considered as a part of an educational system for the vocational education of negroes as a public undertaking in this State.

The contention of appellants is that the trustees of the original Robert Hungerford Industrial School lawfully incorporated the trust by appropriate proceedings filed in the Circuit Court under the Florida non-profit corporation statutes (Sections 6495-6505 C.G.L., 4499-4509 R.G.S.) for the same purposes as those for which the original trust was created, and that the corporation having been allowed to exist and exercise its functions in open and notorious possession of the school and its properties to the exclusion of any other trustees or boards and without objection from the donor, his successors or any one else, that neither the Attorney General, nor any one claiming under the original donor, may now lawfully object to the conveyance of the title to the property involved to the public corporation, and that even if they are not so barred, that the Court should

protect the mortgagees in the mortgage placed on the property before objection was made, by decreeing an equitable lien on said property in favor of appellants for the value of the property, work, materials and services bestowed upon the school and its property, whereby the value of the property and its good will has been enhanced.

So the points to be decided are (1) whether the original trustees or their survivors, had the right to appoint a successor trustee without the aid of a chancery court; (2) if they did not, whether the trust property was subject to being encumbered by a mortgage made by the unauthorized delegated trustee to secure the latter's individual obligation, and (3) whether or not an equitable lien should be decreed on the property because of the circumstances, after the morgage had been found unauthorized. The Chancellor refused to declare an equitable lien altho holding the mortgage unauthorized and void despite the long lapse of time and other circumstances.

In our view, the Chancellor accurately appraised the factual situation as shown by the pleadings and correctly decided that the equities of the controversy were with the appellees, complainants in the court below.

The case below was brought in the name of and is prosecuted by the Attorney General as principal party plaintiff.

"The position of the Attorney General is as the representative of the beneficial interests where the beneficiaries are the public at large or an indefinite class of persons, 'who, because they constitute an indefinite class, cannot themselves appear in person or constitute an attorney.'" Perry on Trusts and Trustees (7th Ed.) Vol. 2, p. 1255.. See Attorney General, v. Garrison, 101 Mass. 223; Wellbeloved v. Jones, 1 Sim. & St. 40, 57 Eng. RePrint 16; Ludlow, v.

Greenhouse, 1 Bligh (N. S.) 17; Parker, v. May, 5 Cush. 336.

In this case the School, as a non-profit corporation, was made defendant because it was the party that gave the mortgage sought to be cancelled of record and was incapacitated to make itself a party complainant for the purpose of praying cancellation of its own *ultra vires* mortgage. Some of the original trustees of the school under the deed of 1899 had participated in making the deed conveying the property to the non-profit corporation which is sought to be cancelled, and consequently such trustees were not in position to complain as party complainants of their own authorized act. So the suit was properly brought in the name of the Attorney General in the absence of other interested parties capable of protecting the trust property. The two individuals who were made parties complainant were so made only for the purpose of receiving the reversion in the event the chancellor decreed that the property reverted to the settlor of the trust. But since the chancellor made no such ruling, their function as parties complainant has become immaterial.

The deed dated April 20, 1899, recited that it was "between Edward C. Hungerford * * * of the first part, and R. C. Bedford, Warren Logan, Mary A. Thurston, J. E. Clark, S. M. Mosely, W. B. Lynch, S. E. Ives, R. C. Calhoun, Trustees of Robert Hungerford Industrial School * * * of the second part," conveying "unto the parties of the second part, and their successors and assigns forever," the property "and the reversion and reversions, remainder and remainders, rents, issues and profits thereof," to have and to hold "unto the said parties of the second part, their successors and assigns to their own proper use, benefit and behoof forever."

The deed dated January ____, 1924, recited that it was made "between Warren Logan and S. E. Ives, as Trustees of the Robert Hungerford Industrial School— * * * of the first part, and the Robert Hungerford Industrial School of Eatonville, Florida, a corporation existing under the laws of the State of Florida, * * * of the second part" conveying to the "party of the second part and to its successors and assigns forever" the property to have and to hold "unto the said party of the second part, its successors and assigns, to its own proper use, benefit and behoof forever." The deed was signed by the grantors as Trustees for the Robert Hungerford Industrial School of Eatonville.

The deed also contained the following:

"Whereas on April 20th, 1899, Edward C. Hungerford and wife, conveyed to R. C. Bedford, Warren Logan, Mary A. Thurston, J. E. Clark, S. M. Mosely, W. B. Lynch, S. E. Ives and R. C. Calhoun, as Trustees of Robert Hungerford Industrial School of Eatonville, Orange County, Florida, by deed recorded in Deed Book 152, page 110 Public Records of Orange County, Florida, the property hereinafter described.

"And Whereas the said Robert Hungerford Industrial School of Eatonville aforesaid has been incorporated as a non-profit corporation under the laws of the State of Florida as Robert Hungerford Industrial School of Eatonville, Florida.

"And Whereas the parties of the first part are the Surviving Trustees of the Robert Hungerford Industrial School of Eatonville, Florida, to whom said conveyance was made and are now desirous of vesting the legal title to the property hereinafter described in said corporation."

On May 18, 1911, S. E. Ives, W. B. Lynch, Mary C. Calhoun, Mary A. Thurston and R. C. Bedford filed their petition seeking to have the Robert Hungerford Industrial

School incorporated as a non-profit educational institution. The proposed charter contained a provision that the maximum indebtedness that could be contracted by the corporation was $10,000.00. The proposed charter also provided that the Board of Trustees should consist of from five to nineteen members, with power to fill vacancies in their number and powers to enact by-laws to provide for the method of electing trustees and fixing their terms of office. The Circuit Court approved this proposed charter.

On June 9, 1931, the Circuit Court likewise approved an amendment to the charter authorizing the corporation to subject itself to a maximum indebtedness of $25,000,00, and authorized it to execute and deliver to John C. Jordan, Eula P. Jordan and G. O. Kummer a mortgage on all of the real and personal property of the non-profit corporation. On June 12, 1931, the mortgage was executed between the corporation and the Jordans and Kummer. This is the mortgage that was cancelled by the decree appealed from in this case.

The deed from Edward C. Hungerford to the Trustees of the Robert Hungerford Industrial School made in 1899 was executed prior to the enactment of and is not governed by Chapter 5145, Acts of 1903. The 1903 Act provides that unless a contrary intention appears in a deed, every conveyance by deed is to be construed to pass a fee simple title even in the absence of the use of words of limitation such as "heirs," "successors," or other similar words. See Ivey v. Peacock, 56 Fla. 440, 47 Sou. Rep. 481; Tyler v. Triesback, 69 Fla. 595, 69 Sou. Rep. 49.

By use of the words "Trustees" and "successors and assigns" and absent the word "heirs," the intention was to create some estate other than one of absolute inheritance in the grantees, and yet it was to be an estate of succession forever. The words employed indicate an intention on

614

the part of the settlor of conveyancing the property to the named persons as trustees to hold it in trust for the benefit of the Robert Hungerford Industrial School and that the successors and assigns of the named trustees should likewise hold it for like purposes forever. There is no presumption that any particular estate was intended to be conveyed other than the words of the deed itself indicate.

The purpose of a trust must appear from the instrument creating it. 5 R.C.L. 298, Sec. 9. The purpose of the trust here created was to place the forty acres involved to the use of the Robert Hungerford Industrial School, a school for the education of negro youths, as a memorial to his son Robert. That the education of youth is a charitable purpose has been recognized as far back as the statutes of Elizabeth.* So the deed hereinbefore mentioned was the method by which the settlor sought to accomplish a charitable trust for negro education.†

A gift or bequest to an unincorporated or incorporated association which exists solely for charitable work will usually be construed to be held upon trust for that purpose. In re: Merchant's Estate, 143 Cal. 537, 77 Pac. Rep. 475; Carter v. Balfour's Adm'r., 19 Ala. 814, 824; In re: Winchester's Estate, 133 Cal. 271, 65 Pac. Rep. 475; Missouri Historical Soc. v. Academy of Science, 94 Mo. 459, 8 S. W. Rep. 346; American Bible Soc. v. American Tract Soc., 62 N.J. Eq., 219, 50 Atl. Rep. 67. So a gift of property to certain named individuals, trustees of an unincorporated, charitable institution should likewise be construed to be upon trust for the charitable purpose inherent in the grant, which purpose in this case was the establishment and maintenance of a school for the education of negro youths.

---

*S.T: 43 Elizabeth C.4.
†Montgomery, vs. Carlton, 99 Fla. 152, 126 Sou. Rep. 135.

"A charity in its legal sense may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons,—either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." Jackson v. Phillips, 14 Allen 556.

There was no mention made in the deed of 1899 conveying the land to the trustees of the Robert Hungerford Industrial School of a power in the designated trustees to convey the property or of a power to choose their successors.

In the absence of authority conferred by the trust instrument, a trustee has no authority to appoint his successor. Whitehead v. Whitehead, 142 Ala. 163, 165, 37 Sou. Rep. 929; Adams v. Highlands Cemetery Co. (Mo.) 192 S.W. Rep. 944; Wilson v. Towle, 36 N. H. 129; In re: Doyle's Estate, 233 N. Y. S. 667, 133 Misc. 647. But such vacancies will be filled by the chancery court. Landram, v. Jordan, 203 U. S. 56, 27 Sup. Ct. Rep. 17, 51 L. Ed. 88; Kenan v. Bowers, 50 Fed. (2nd) 112; Knott v. Morris, 101 Fla. 1299, 134 Sou. Rep. 615.

Trustees who hold land conveyed to them in trust have no other rights that are given in the trust instrument or may be implied therefrom. 65 C. J. 732. Land held under a valid trust for specific charitable uses, cannot be conveyed away by the trustees. Nauman v. Weidman, 182 Pa. St. 263, 37 Atl. Rep. 863. The mere fact that there is a deed of trust, does not give any power to sell. Hattie v. Gehin, 76 N. J. Eq. 340, 76 Atl. Rep. 4.

Consequently the trustees named in the deed of 1899 had no authority expressly or impliedly given to convey the property to the Robert Hungerford Industrial School because none was given by the trust instrument or by the order of a court of chancery. It is immaterial what the purpose of the transfer was if it was without authority of law. The deed of January, 1924, being made without authority of law was therefore void and subject to cancellation of record upon application of proper parties such as are here before the Court.

The mortgage thereafter made by the Robert Hungerford Industrial School to the Jordans and Kummer, although apparently valid on its face, was given by the school as a lien on property to which it did not have the legal title. Although there was a deed of record to the school, a non-profit corporation from two of the original trustees, the mortgagees of the School were apprised by the record that at the time the conveyance was made, there was no authority to make it either in the trust instrument under which they took or by any order of a court of chancery authorizing the conveyance to be made. Therefore the mortgage predicated upon the void deed was likewise void and subject to being cancelled of record upon application of proper parties in the interest of conserving and executing the original trust.

The record shows that the non-profit corporation had a maximum debt limit of $10,000.00 from the time of its creation until its charter was amended June 9, 1931, allowing it to contract debts not in excess of $25,000.00. The amendment to the charter authorized the mortgage to be made to the Jordans and Kummer, which mortgage was executed three days later,—a fact that indicates that the debt of $22,391.05 had already been created before the corporation was authorized by its charter to increase its maximum indebtedness from $10,000.00 to $25,000.00.

And likewise this circumstance indicates that the mortgagees had notice that their claim or everything above the $10,000.00 contracted prior to June 9, 1931, was *ultra vires*, even as to the corporation, and that the corporation had no power to obligate itself beyond the maximum limit set out in the charter at the time the debt was created.

Ordinarily in the absence of authority conferred by the trust instrument, trustees are considered to have no power to mortgage the trust property. 65 C. J. 785; Chapman v. Williams, 112 S. C. 402, 406, 100 S. E. Rep. 360. The mortgagees of the school consequently could no more acquire a valid mortgage on the property involved by the method resorted to than they could have acquired by means of a mortgage obtained directly from the original trustees themselves.

The statutory act of the court in approving the proposed charter of the Robert Hungerford Industrial School did not change the status of the trust property. Nor could the charter provisions relating to the powers and duties of the trustees under the charter enlarge the powers and duties of those persons who took as trustees under the deed of 1899. Those taking under the trust instrument of 1899 were trustees under the trust instrument while those elected trustees under the charter of the corporation were trustees under the corporation. As each set of trustees were governed by the instrument creating the trust under which that particular set of trustees held, the attemped incorporation of the trust was ineffectual to alter the limitations that were applicable to it, absent the attempted incorporation.

The claim of title by adverse possession sufficient to support the mortgage is without merit because the non-profit corporation derived its claim of title to the property from the alleged survivors of the original trustees of the deed of 1899. So the claim was not adverse to that of the original

618

trustees but was the same identical claim to the property. Whatever claim the non-profit corporation had to the property was through the trustees of the deed of 1899 and not through holding adversely to those trustees.

Further discussion of the issues seems a work of supererogation.

No error having been made to appear in any of the orders or in the final decree of the Chancellor, the final decree below should be affirmed, and it is so adjudged.

Affirmed.

ELLIS, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.