146 So.2d 383 (1962)
Carol C. WATSON, Appellant,
v.
ST. PETERSBURG BANK & TRUST COMPANY, and James T. Earle, As Administrator Ad Litem of the Estate of John A. Watson, Deceased, Appellees.
No. 2765.
District Court of Appeal of Florida. Second District.
October 17, 1962.
Rehearing Denied November 12, 1962.
Fred B. Sieber, of Harris, Barrett, McGlothlin, Dew & Sieber, St. Petersburg, for appellant.
*384 Gordon D. McCutcheon, Jr., St. Petersburg, for appellees.
SMITH, Judge.
The appellant, as plaintiff, filed her complaint against the defendants-appellees, alleging that the plaintiff and John A. Watson, her husband, executed an instrument, entitled "Trust Agreement," with the St. Petersburg Bank and Trust Co. and conveyed certain real and personal property to said bank as trustee, under the terms of said agreement; that subsequently, Mr. Watson died, and that the trust was a dry and passive trust which was executed by the Statute of Uses. The plaintiff prayed for judgment compelling the bank to make proper transfer of all of the property and for such other and further relief as the court might deem proper. The bank answered, denying the trust was passive, but joining in the plaintiff's prayer for relief insofar as that prayer requested the court to interpret the alleged Trust Agreement. After appointment, the Administrator Ad Litem answered, denying that the trust was a dry, passive trust which was executed by the Statutes of Uses.
The court in its final decree found, in effect, that the Trustor, John A. Watson, intended a survival of the reserve power to revoke and terminate; that the Trust Agreement was deficient in that it failed to disclose a genuine trust purpose; that the powers retained by the settlor in their cumulative effect amount to ownership of the trust estate and, therefore, the purported Trust Agreement and the conveyances made pursuant thereto were a nullity.
The appellant contends that the decree of the court was outside of the issues framed by the parties and that the Agreement created a valid, but dry, passive and naked trust, which was executed by operation of law, thus vesting the legal title to the trust assets in the appellant. The appellees contend that the issues were not so limited but that a valid trust was created and it continued as an active trust. Thus, neither of the parties support the finding of the court that a valid trust was never created.
The issues framed by the pleading did not confine the court to the question as to whether or not the purported trust was active or passive and, therefore, the court could, as it did, consider the issue as to whether or not the trust was, in fact, created.
The Trust Agreement contains many statements which may be variously classified as pertinent, inconsistent, vague or uncertain. Some of these are paraphrased as follows:
John A. Watson is designated the "Trustor," which designation shall include all successors in interest to the Trustor.
Carol C. Watson is designated the Beneficiary, which designation includes all successors to the Beneficiary.
The Agreement refers to the fact that the Trustor and the Beneficiary are about to convey title to certain property to the Trustee in trust for the uses and purposes specified in the Agreement.
The property will be held by the Trustee until the whole of the trust estate is conveyed free of the trust.
The Trustor reserves the right at any time to revoke the trust in whole or in part.
The Trustee was required, at any time, to convey the trust property to such persons as the Trustor might designate.
The Trustee was specifically not required to procure or maintain insurance, pay any liens or taxes or other charges against the property, nor to collect or disburse rents or perfect title, or in any respect care for the trust *385 estate against any legal or equitable attack. All responsibility toward the property and the trust was declared specifically as vesting solely and exclusively on the Beneficiary and the other beneficiaries of the trust and not on the Trustee.
The sole and exclusive liability of the Trustee was specifically referred to as that liability to convey on the demand of the Trustor.
The Beneficiary was given the right, and it was directed that she be allowed, to continue in full, free and undisturbed possession of the property, without any rental or accounting to the Trustee or any of the other beneficiaries under this trust; but this provision was then limited with the statement that the Beneficiary shall not incur any liabilities in connection with the property for which the Trustee may in any event become legally chargeable.
One of the specifically recited objects and purposes of the trust was to hold title to the trust property and to protect and conserve it until its sale or other disposition or liquidation. Then the Agreement specifically states that the Trustee shall not manage or operate the trust property nor undertake any other activity not strictly necessary to the attainment of the objects and purposes.
The Trustee could resign at any time and in the event of resignation a successor could be appointed by the person or persons then entitled to direct the Trustee in the disposition of the trust property. If no successor in trust was so named within ten days, then the Trustee could convey the property to the Trustor or file suit for appropriate relief.
The terms and conditions of the Agreement inured to the benefit of and were binding upon the executors, administrators, heirs and all other successors in interest of the Beneficiary.
The general rules of construction of written instruments apply to the construction of trust instruments. The cardinal rule is to determine the settlor's intention, which is to be ascertained from the Trust Agreement. The intent to create a trust must be definite and particular. It must show a desire to pass benefits through the medium of a trust, and not through some related or similar device. The trust intent and its appropriate expression should be clear and convincing. Where the trustee is given only a slight property interest, then the condition thereby created is more characteristic of agency or bailment. The fact that the settlor received no consideration becomes important where the settlor has failed to perform all of the acts necessary to create a trust, since equity will not complete the gift nor compel the trustor to complete it. While neither the reservation of a power to revoke the trust and take back the res nor the retention of a power to modify the trust and change the beneficiaries in themselves make the trust nugatory, they are elements to be considered. The power of the trustor to direct conveyances of the property to any person is an element contrary to a trust intent. Normally, the trustor does not provide that the beneficiary shall have a possessory interest; however, it is possible for him to permit the beneficiary to enjoy the trust property directly, although under the supervision of the trustee. The trustor must impose upon the trustee sufficient duties to make the trust an active or special trust, as distinguished from a passive, bare, dry, naked, general trust, or a use. A trust without naming any duties to be performed by the trustee creates a trust which is passive, but trusts which are passive, because of the lack of sufficient duties placed upon the trustee, are to be distinguished from trust which fail because of the uncertainty of the statement of the duties which the trustee is to perform. In the latter instances, there is a resulting trust for the *386 trustor or his successors, rather than an execution of the trust in favor of the beneficiary. The transfer of possession to the trustee is the natural and usual thing in order to give the trustee power to manage. Bogert, Trusts and Trustee, §§ 46, 49, 50, 103, 104, 141, 148, 169, 181, 202, and 206; Jordan v. Landis, 1937, 128 Fla. 604, 175 So. 241; Webster v. St. Petersburg Federal Savings & Loan Assoc., 1945, 155 Fla. 412, 20 So.2d 400.
In analysing the Trust Agreement in the light of the general principles of law heretofore stated, and with particular reference to the parts previously paraphrased, we affirm the determination of the chancellor that no valid trust was created by virtue of the Agreement. The trustee has no duties of any substance. The situation thereby created is more characteristic of agency or bailment. The powers reserved in the trustor were not personal, but were also reserved to his successors in interest. The Agreement does not establish a dry, passive trust which can be executed by the Statute of Uses. To so hold would require us to ignore the provisions in the Agreement to the effect that the Trustee was directed to hold the trust property until the whole of the trust estate was conveyed free of the trust; that the responsibility toward the property and the trust estate rest solely and exclusively not only on the Beneficiary, but also on the other beneficiaries of the trust; and that such other beneficiaries are not named or designated. The Agreement cannot be construed as vesting all of the interest in the trust property in the beneficiary in order to effect a merger, as if the sole trustee was also the sole beneficiary, because of the reference to "other beneficiaries of the trust." Appropriate expressions of a trust intent are not clear and convincing. This Agreement fails to show the properly expressed desire to pass benefits through the medium of a trust.
As was the case in Hansen v. Denckla, 1956, Fla., 100 So.2d 378, the cumulative effect of the reservations made the trust illusory. The agreement did not create a naked or passive trust, as was the case in Elvins v. Seestedt, 1940, 141 Fla. 266, 193 So. 54, 126 A.L.R. 1001. In so determining, we have not overlooked the contention of the parties that the power to revoke and assign or transfer in themselves do not necessarily void the trust, citing Jones v. Clifton, 101 U.S. 225, 231, 25 L.Ed. 908, and United Building and Loan Association v. Garrett, U.S.D.C. 1946, 64 F. Supp. 460, and other decisions to like effect. We find these decisions to be not determinative of the decisions here, because in each of them the power reserved was personal to the trustor. In the absence of express direction to the contrary, the power to revoke is personal to the trustor when reserved to him and does not pass to his successor in interest on his death. However, the trustor may vest the power to modify or revoke in others. Bogert, Trusts and Trustee, § 994; 3 Scott on Trusts, 2nd Ed. § 330, p. 2414.
The judgment is affirmed.
SHANNON, C.J., and ODOM, ARCHIE M., Associate Judge, concur.