Richard R. WIER, Jr., Attorney General of the State of Delaware and William R. Lummis, Delaware Ancillary Administrator of the Estate of Howard R. Hughes, Jr., Plaintiffs,

v.

**HOWARD HUGHES MEDICAL INSTITUTE, a Delaware Corporation, Defendant.**

Court of Chancery of Delaware, New Castle County.

Submitted March 27, 1979.

Decided June 26, 1979.

Cecil L. Davis, Jr., Asst. Atty. Gen. of State of Fla., Tallahassee, Fla., for movant Robert L. Shevin, Atty. Gen. of State of Fla.

Henry N. Herndon, Jr., and Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, for defendant Howard Hughes Medical Institute.

MARVEL, Chancellor:

The amended complaint herein alleges that since the death of its founder and original Trustee, Howard R. Hughes, the defendant Howard Hughes Medical Institute has been improperly managed and controlled by a so-called Executive Committee notwithstanding the fact that its certificate of incorporation requires that such corporation is to be "* * * managed and controlled by a Trustee." Plaintiffs accordingly ask this Court to appoint such a Trustee to succeed the late Howard R. Hughes and manage and control the affairs of such corporation. Also sought is an accounting of the financial affairs of the defendant Institute since the death of Mr. Hughes.

The defendant Institute's answer raises several affirmative defenses in addition to denying that it is required by its charter to be managed solely by a Trustee, such answer having been later amended to allege that the defendant Institute is, in any event, being managed in a proper manner.

After the filing of such responsive pleading, Robert L. Shevin, Attorney General of Florida, filed the pending motion for leave to intervene, said movant taking the primary position that he should be allowed to intervene in this case as a matter or right pursuant to the terms of Rule 24(a) of this Court because as such Attorney General he has an interest in the matter in issue which cannot be properly represented without his presence in that as Florida's Attorney General he is obliged to protect the interests of a charitable trust such as defendant and that, in any event, he also has the duty to protect the interests of the University of Miami Medical Center, which has for a substantial period of time been the recipient of generous gifts from the defendant Institute.

In the alternative movant argues that he should be permitted to intervene in this action under the provisions of Rule 24(b) in that he, as well as the Attorney General of Delaware, is seeking to ensure that the defendant Institute operates under the direction of a qualified Trustee, that his motion is timely and should be granted under the discretionary powers of the Court.

The defendant Institute has responded to the motion of the Attorney General of Florida by making the following objections to his application for leave to intervene in this litigation, namely:

"(1) Some issues he seeks to litigate are not presently before the Court and would unduly broaden the scope of this action; (2) to the extent that he seeks to litigate matters which are presently before the Court, any interest he claims in such matters is adequately represented by an existing party, the Attorney General of the State of Delaware; (3) the intervention of the Florida Attorney will not contribute to the prompt and fair adjudication of the rights of the existing parties and instead will unduly delay or prejudice such an adjudication and (4) no statute confers any right upon Mr. Shevin to intervene in these proceedings."

The basic facts here involved are as follows. The Howard Hughes Medical Institute was founded[1] in 1953 as a non-profit Delaware corporation, having as its avowed purpose the advancement of human knowledge within the confines of the established sciences and the application of such knowledge to the improvement of mandkind. The defendant Institute at present carries on medical research in laboratories and the like which are associated with twelve prominent university hospitals and employs more than 275 persons. The Institute's medical research activities have grown significantly over the years since its inception in terms of the number of personnel employed and money budgeted and spent in research projects.

The Institute's Medical Advisory Board provides medical research guidance to the Institute. It consists of seven nationally known physician-scientists who either head or hold senior positions in leading medical schools. Such board works closely with the Institute's director of medical research and its Executive Committee to recruit, select and supervise the work of members of the Institute's research staff and to formulate and review, on a continuing basis, the Institute's research projects.

In addition to overseeing the medical research functions of the Institute, as outlined above, its Executive Committee has also allegedly assumed the responsibility for overseeing the handling of the Institute's endowment fund, the growth in the value of which has allegedly permitted the Institute to expand its medical research activities.

The Institute's Executive Committee was established by Mr. Hughes on December 17, 1953, the same day that the Institute was incorporated. Originally, the Executive Committee, by Mr. Hughes' direction, was intended to "* * * have and exercises such powers, duties, and authorities as the Trustee may from time to time designate." On July 3, 1968, however, Mr. Hughes allegedly caused to be adopted the following so-called "Resolutions of Trustee."

"RESOLVED that except as may be otherwise provided in the Certificate of Incorporation or in further resolutions of the Trustee, there is hereby delegated to the Executive Committee all of the duties and powers to manage the affairs of the corporation which Delaware law had conferred upon the boards of directors of corporations organized for profit."

As noted above, however, the certificate of incorporation of the Institute provided that the Institute was to be managed and controlled by a Trustee to be named by the incorporators, and on December 17, 1953, such incorporators had selected Howard R. Hughes as such Trustee, a position he continued to fill until his death on April 5, 1976.

Such certificate of incorporation further provided that successor Trustees were to be chosen either by an incumbent Trustee or in the manner designated by the original Trustee. Inasmuch as Mr. Hughes died without naming a successor Trustee or designating a means of selecting such official, the affairs of the Institute have in recent years been basically controlled by Mr. F. W. Gay and Mr. Chester C. Davis, majority members of the so-called Executive Committee of the corporation.

---

1. The Institute was funded by the transfer to it of the electronics division of Summa Corporation, the latter being at the time wholly-owned by Summa through the Hughes Aircraft Company, all of the stock of which latter company has since been held by the Institute.

On July 10, 1978, the Executive Committee of the Institute, under the aforesaid alleged domination of Messrs. Gay and Davis, purported to amend defendant's original certificate of incorporation and corporate by-laws so as to abolish the powers, duties, and office of the Trustee and to vest the authority of such office in themselves and Mr. George W. Thorn, as a so-called Executive Committee.[2]

The narrow question before the Court for decision at the present time is that raised by the motion of the Attorney General of Florida for leave to intervene in this action, namely, whether or not movant has shown, as required by Rule 24, that the representation of movant's interest by existing parties is or may be inadequate after determining just what such interest is, *Schiff v. RKO Pictures Corporation*, Del. Ch., 136 A.2d 193 (1954).

Movant's basic position is that he is entitled to intervene as a matter of right because he, as Attorney General of the State of Florida, the state in which the defendant Institute is situate, has an interest in this litigation which cannot be protected without movant being afforded party status, contending, in effect, that said interest is not being adequately represented by the present plaintiff because such official allegedly has no reason to be concerned with either Florida's interest in the affairs of the Institute or of the interests of the University of Miami Medical Center, which, as noted above has been benefited by the defendant Institute over recent years.

After noting that the defendant Institute has been qualified to do business in Florida as a charitable corporation since December 19, 1953, that its principal place of business is in Florida, that its employees all reside in Florida, that the affairs of such Institute are managed exclusively in Florida, and that it has, as noted above, for many years made substantial gifts to the work of the aforementioned Medical Center of the University of Miami, the Attorney General of Florida contends that he has not only the authority but also the duty under Florida law to represent the interests of the general beneficiaries of a charitable trust being administered in Florida, *State v. S. H. Kress & Co.*, Fla.Supr., 115 Fla. 189, 155 So. 823 (1934); *Jordan v. Landis*, Fla.Supr., 128 Fla. 604, 175 So. 241 (1937), and *Bradshaw v. American Advent Christian Home, etc.*, Fla. Supr., 145 Fla. 270, 199 So. 329 (1940). The law of Delaware and the common law of the United States, it is argued, similarly recognize the authority of state attorneys general, or such other person as may have a special interest in the management of a charitable trust, to maintain a suit to enforce it, *Cannon v. Stephens*, Del.Ch., 159 A. 234 (1932), and *Delaware Trust Co. v. Graham*, Del.Ch., 61 A.2d 110 (1948).[3] See also

---

**2.** These amendments as of July 10, 1978, deleted the references of the original charter and by-laws to a Trustee and provided in a so-called restated certificate of incorporation.

"FIFTH: The corporation shall have no capital stock and shall be managed and controlled by an Executive Committee. The corporation shall have no Members (except to the extent required by the laws of the State of Delaware, in which event the Members shall be the members of the Executive Committee and shall not, in their capacity as Members, have any voting rights except as required by the laws of the State of Delaware). The Executive Committee may, at any time and from time to time, delegate any responsibility and authority to such persons as it may select, in accordance with such by-laws or resolutions as the Executive Committee may adopt."

\*    \*    \*    \*    \*    \*

"TWELFTH: In the event that the original Trustee of the corporation, Howard R. Hughes, has named a person as successor Trustee of the corporation, the Executive Committee shall recognize such person as having all the powers and rights of the Executive Committee under this certificate of incorporation and the by-laws of the corporation, including the power to manage and control the corporation, appoint and remove members of the Executive Committee, and amend the certificate of incorporation and the by-laws of the corporation."

**3.** Movant also relies on Section 391, Restatement 2d, Trusts, p. 278, which reads as follows:

"A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest . . . ."

*Israel v. National Board of YMCA*, R.I., 117 R.I. 614, 369 A.2d 646 (1977). Furthermore, the claimed right of the Attorney General of Florida to appear in courts of another state to protect the interests of a beneficiary of a charitable trust with its situs in Florida, has allegedly been recognized in *State of Florida ex rel. Shevin v. Exxon Corp.* (5th Cir.), 526 F.2d 266 (1976), in which the court noted:

"* * * the Attorney General's power to institute litigation on his own initiative is not limited to quo warranto proceedings in Florida *or elsewhere*; it is as broad as the 'protection and defense of property and revenue of the state,' and, indeed, the public interest requires." (emphasis added).

The Attorney General of Florida also takes the position that even if he were to institute a separate action in Florida to enforce the charitable trust in question, he would be prevented from litigating the same issues involved in this proceeding under settled principles of comity, and furthermore, were the basic relief sought in this case *to be pursued in two or more courts of concurrent jurisdiction*, the decision first reached would control and could be pleaded as res judicata in a later proceeding, 20 Am.Jur.2d, Courts, Section 128, p. 481.

Movant urges as a second ground in support of his motion that a Florida statute (Section 16.01) allegedly grants him an unconditional right to intervene here. This statute apparently requires the Attorney General of Florida to appear in the courts of other states in cases in which Florida may be a party or is in any way interested, purporting to require that the Attorney General of Florida

". . . shall appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal, or in equity, in which the state may be a party, *or in anywise interested*, in the Supreme

* * * * * *

"Attorney General. Since the community is interested in the enforcement of charitable trusts, a suit to enforce a charitable trust can be maintained by the Attorney General, of

Court and district courts of appeal of this state; he shall appear in and attend to such suits or prosecutions in any other of the courts of this state *or in any courts of any other state* or of the United States; he shall have and perform all powers and duties incident or usual to such office . . . ."

Since Chancery Court Rule 24(a) provides, in part, that upon timely application anyone "* * * shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene * * *", movant argues that he cannot be denied the right to intervene on behalf of the State of Florida which is obviously interested in this proceeding.

█ The Institute's reply to such arguments is as follows: First that since movant has in fact conceded that he seeks leave to file the same claim by way of intervention as that relied on by the plaintiffs, it is obvious that his interests are adequately represented by the present parties. However, as noted above, the first step in providing an answer to the question of whether or not an applicant's interest is being adequately represented is to decide exactly what such interest is, movant claiming to be entitled to become a party to this action in order (1) to prevent the demise of the Institute as a charitable trust, (2) to protect the interests of the University of Miami Medical Center, and (3) to ensure Florida's continued connection with the defendant Institute. However, where the relevant pleadings in issue are identical, as here, a movant to be granted leave to intervene must demonstrate either (1) collusion between the purported representation and those to whom he is formally opposed in the litigation, (2) a lack of diligence on the part of the present representative, or (3) a conflict of interest between the present representative and movant, 7A Wright and Miller Section 1909, at pp. 529–31. I am satisfied,

the State in which the charitable trust is to be administered. In some states the local district or county attorney can maintain such a suit."

however, that none of these situations presently exists in the case at bar.

■ Next, it is generally recognized that the appropriate person to enforce the provisions of a Delaware charitable trust is the *State Attorney General, Pollock v. Peterson*, Del.Ch., 271 A.2d 45 (1970), and the mere fact that the facilities of the Howard Hughes Medical Institute, a Delaware corporation, are situate in the State of Florida does not, in my opinion, mandate that the Attorney General of that state be made a party to this action at the present time, the sole question now before the Court being whether or not the Institute should be presently managed by a Trustee and not by a self perpetuating Executive Committee. Furthermore, the word "representation" in Rule 24 has been construed to include "* * * the quality of the case which plaintiff may be in a position to present in contrast to the calibre of his attorney", *Young v. Janas*, Del.Ch., 136 A.2d 189 (1954). Here, however, I am satisfied that the Attorney General for the State of Delaware is fully qualified to litigate the narrow issue now before the Court. I am therefore of the opinion that the motion of the Attorney General of the State of Florida for leave to intervene in this action under the provisions of Rule 24(a) must be denied on the ground that the principal matter which said movant seeks to litigate in this action, namely the interests of the University of Miami Medical Center, is not directly related to the narrow issue raised in the amended complaint and answer thereto, *Summa Corporation v. First National Bank of Nevada*, Del.Ch., C.A. No. 5058 (June 1977). I am also of the opinion that the Florida statute on which movant relies to bring him within the purview of Rule 24(a)(1) is not concerned with an alleged right to intervene and that the Court should not read such an intent into the statute in question.

■ Movant also relies on the provisions of Rule 24(b)(2) as a ground for intervention in the present action, it being borne in mind that in deciding whether or not to allow an applicant to intervene under the provisions of Rule 24(b), this Court must consider whether such intervention will unduly delay or prejudice the adjudication of the rights of the original parties, *Campbell v. Loew's, Inc.*, Del.Ch., 136 A.2d 191 (1957), and, in any event, it must also be determined by the Court whether or not the present applicant's claim has a question of law or fact in common with the main action.

■ Again emphasizing that applicant seeks leave to prosecute virtually the same claim as that asserted by the present plaintiffs and that he has filed a timely motion, the Attorney General of Florida concludes that since his participation in this action is concerned with the same issues and seek the same relief as that sought by the plaintiffs, this Court should follow the precedents of this Court which have allegedly given a liberal construction to Rule 24(b) and exercise its discretion so as to allow him to intervene in this action. Furthermore, since it appears that the only contact which the Institute has with the State of Delaware is by reason of its incorporation here, to deny Florida's participation in this proceeding by its Attorney General would frustrate Florida's proper role in its capacity as a supervisor over the affairs of the Institute and would at the same time have the effect of violating the principle that all interested persons should be made parties to proceedings involving a charitable trust. 14 C.J.S. Charities § 62.

The Institute's response to such contention is that movant has advanced no valid reason why this Court should exercise its discretion on his behalf and that where a petition for leave to intervene adds nothing to the claim asserted in the original complaint, leave to intervene may appropriately be denied, 35A C.J.S. Federal Civil Procedure § 136, p. 218.

I conclude that the principal motivation behind movant's application for leave to intervene in this litigation at the present time actually centers around his desire to attempt to see to it that the defendant Institute continues to make generous contributions to the University of Miami Medi-

cal Center, a concern which is not directly related to the basic issue next to be decided in this litigation, namely whether or not the defendant should continue to be managed and controlled by an Executive Committee rather than by a successor Trustee. Accordingly, I am of the opinion that it would not contribute to the resolution of such basic issue but would on the other hand actually complicate the resolution of such issue to permit applicant to intervene now. As stated in *Crosby S. Gage & Valve Co. v. Manning, Maxwell & Moore* (D.C.Mass.), 51 F.Supp. 972 (1943).

> "It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention."

Movant's application for leave to intervene in this litigation at the present time will be denied without prejudice.

An appropriate form of order may be presented on notice.